CARR v. HALL.

5-2846                                                363 S. W. 2d 223

Opinion delivered December 10, 1962.

[Rehearing granted January 21, 1963—Supplemental Opinion on Rehearing p. 1044.]

*Bernard Whetstone*, for appellant.

*J. S. Thomas* and *G. E. Snuggs*, for appellee.

PAUL WARD, Associate Justice. This is a child custody case, coming to us on appeal from a decree refusing to award custody of an eleven-year-old daughter to the mother, and fixing visitation rights. The issue arises out of the factual background presently set out.

Fannie Mae Hall and Maurice Oron Hall were married in 1950, and they have a daughter named Patricia Louise. On November 15, 1961 Fannie filed a petition for divorce, alleging indignities, in which she stated it was satisfactory to her that custody of Patricia (then ten years old) be given to Patricia's father. On December 18, 1961 a decree was entered in accordance with the petition. There was no appeal. The day following the decree appellant (Fannie Mae) married Curtis Carr.

On May 10, 1962 appellant, represented by new counsel, filed a petition (in the same court that granted the divorce) asking for custody of Patricia subject to visitation rights of appellee. After an extensive hearing, at which petitioner testified, Patricia, the mother of appellee, Dr. Murphy and others, the court, on May 31, 1962, amended the original decree "to the extent that the plaintiff-petitioner is entitled to have visitation with the child, Patricia Louise, at all reasonable and seasonable times." Appellant then promptly moved the court to "spell out the specific terms and conditions of said visitation rights."

About ten days later appellant filed another petition asking the court to require "that the visitations be had entirely away from the home of" appellee. At the hearing both appellant and appellee testified, and the court entered another decree on June 15, 1962. In this decree the court held that "the visitations should be from 9:00 to 12:00 each Saturday morning in a home or house across the road from appellee's home and that petitioner may take Patricia for a ride or to petitioner's home, should Patricia desire to go."

Appellant gave notice that she was appealing from the court's refusal to grant her full custody of Patricia (decree May 31, 1962) and also from the limitations placed on visitation rights (decree June 15, 1962).

We have carefully read the record and considered all of appellant's arguments, but are not convinced the trial court committed any reversible error. Running through all of Patricia's testimony is the strong implication she would not be happy living with her mother and step-father. We are unwilling to substitute our judgment for that of the trial court and thereby force Patricia to leave her father and live with her mother. Patricia is eleven years old and is pictured as a bright intelligent girl. The trial court found that "she knows exactly what this is all about." Appellant now strongly persists that she is greatly disturbed by not being able to have Patricia with her in her new home, but she cannot deny she voluntarily gave up that privilege the year before. The trial court had these parties before him on three separate occasions over a period of several months, and he had a much better opportunity than we have to evaluate the testimony. The court's separate statement of facts which appears in the record shows that due consideration was given to the best interest of Patricia and also to the rights and feelings of appellant.

In numerous decisions of this Court we have clearly pointed out that the best interest of the child is the paramount consideration of the Court in custody cases. See: *Oliphant* v. *Oliphant*, 177 Ark. 613, 7 S. W. 2d 783; *Miller*

v. *Miller,* 208 Ark. 1058, 189 S. W. 2d 371; *Duffy* v. *Dixon,* 209 Ark. 964, 193 S. W. 2d 314. The wishes of the involved child may be considered where it is capable of making an intelligent choice. See: *Patterson* v. *Cooper,* 163 Ark. 364, 258 S. W. 988; *Dill* v. *Dill,* 209 Ark. 445, 191 S. W. 2d 829.

In refusing to change the original decree by giving custody of Patricia to appellant, the court first held that appellant could have visitations with Patricia "at all reasonable and seasonable times." Appellee expressed no disagreement with this modification, but appellant asked to have it changed in two respects: viz., she wanted a definite time fixed for visitations, and she wanted the right to visit with Patricia away from appellee's home. The court granted appellant's request in this way. Appellant has the right to take Patricia each Saturday from 9 a. m. to 12 a. m., with or without Patricia's consent, away from appellee's home to a house nearby. During this time appellant can take Patricia riding or she can take Patricia to appellant's home "should Patricia Louise so desire." It seems that appellant's main objection to the court's order is that it gives Patricia the right to decide whether she will or will not go to her mother's home—or go riding with her.

Under the facts and circumstances of this particular case we not only think the court's order was proper but wise and in the best interest of Patricia and her mother. If Patricia were forced to visit in her mother's home it could reasonably increase whatever aversion she now has to doing so. On the other hand, if there is any hope of reconciliation between mother and daughter, appellant is given an opportunity to effect it by love and affection rather than by force. Having Patricia to herself, away from appellee, appellant should be able to persuade Patricia to go with her to her home or to other places. Appellant has been given that opportunity, and who can say it will not succeed? Appellant's fear that appellee will chastise Patricia if she does visit her mother is not justified by the record. Patricia testified that her father never talked to her about her mother in any way that was

unkind; that she was not afraid of her father; and, that her father would not do anything to her if she went to see her mother. As we view this unfortunate situation, appellant is entitled to an opportunity to re-establish a happy relationship with her daughter. She can do this only by love and not by force, and the court has given her that opportunity.

Affirmed.

*Harris, C. J.,* and *George Rose Smith* and *Robinson, JJ.,* dissent in part.

CARLETON HARRIS, Chief Justice, (Dissenting in part). I agree with the majority that the custody of this child should not be changed from the father to the mother, and concur with all that the majority say relative to this point. However, I am of the opinion that the mother should be permitted to take the child to her home on the occasion of the permitted visits. In other words, I would strike that portion of the order which provides "should Patricia Louise so desire," for I am persuaded that the child, even though she were eager to visit in the mother's home, would not do so because of fear of her father. Mr. Hall admitted that he did not want her to go to appellant's home (though he stated that he had not forbidden her), and I am convinced, from reading the testimony, that the child is fearful of acting contrary to his wishes. Mrs. Carr testified in the second hearing that, on going out to her car after visiting with Patricia Louise at the house provided, the little girl said, "Mother, I can't hug your neck, I hope you understand, my Daddy is looking." She also testified that during the visit with her daughter, the latter played the piano while they talked because Patricia did not want her grandmother to hear what was said. Appellant likewise stated that her daughter told her that the grandmother (Mrs. Hall, mother of appellee) had said that if Patricia ever went home with appellant, she could not come back to live. This statement was not denied. Mr. Hall testified that he told Patricia that she did not have to go with her mother to the home unless she wanted to, and various

answers, in both the first and second hearings, indicate his animosity toward his ex-wife. For instance, in the first hearing, he stated that he was afraid if he permitted Patricia to go to Mrs. Carr's home, his ex-wife would get drunk; that, judging from past experience, he could not conceive of any Christian visit that the two might have out of his presence. I do not think the evidence in the hearings justifies such a conclusion on the part of appellee. At another time, Mr. Hall stated, "I do not feel that I have any duty under any circumstances towards Mrs. Carr whatsoever." It is very evident that appellee is rather bitter toward his ex-wife—and perhaps—human nature being what it is—there is some justification. I am not concerned with any duty that he owes Mrs. Carr — but rather only with the duty owed his daughter, and it is my opinion that the child's future welfare, happiness, and stability will be greatly increased if she can have an amiable and happy relationship with both parents. In my view, it is not proper to place the burden on the child for any visit that might be made to the mother's home, for, though I could be in error, it appears to me, in reading the testimony of the parties and the little girl, that a fear of the father's disapproval of any visit to appellant's home, is foremost in Patricia's thoughts.[1] It is true that the little girl stated that she wanted to live with her father— and I have no fault to find with that decision. This, from her testimony, was evidently influenced to a large degree by the fact that her mother married Mr. Carr, and she does not desire to be around her stepfather. Again, I can completely understand this sentiment. But this dissent is not directed to the custody order—only to the 3-hour visi-

---

[1] Patricia's testimony is vague and uncertain in many respects. For instance, she never specifically stated why she did not want to go to the mother's home, and many of her answers were, "I don't know." There is a definite indication that the father's ideas have influenced her feelings. From the transcript,

"Q. Has your father talked to you about your mother?
A. No.
Q. He hasn't told you, hasn't tried to?
A. He's told me the situation.
Q. He told you what the situation was and that is the reason you didn't want to go see your mother?
A. For what reason?
Q. From what he told you?
A. Well, in a way yes and in a way no."

tation provided on each Saturday morning. I would simply suggest that the mother be permitted to take the child to her home *at a time when Mr. Carr is not present*; in fact, the order could provide that Mr. Carr should not be present when the visit is made.

Because I feel that leaving the decision to visit in the mother's home places pressure upon Patricia Louise, and because I seriously doubt that she will ever make such a visit as long as her father disapproves, I respectfully dissent to that portion of this court's opinion.

I am authorized to state that Justices George Rose Smith and Robinson join in this dissent.