RICHARDS *v.* NESBITT.

5-3217

377 S. W. 2d 40

Opinion delivered March 30, 1964.

*John F. Park,* for appellant.

*J. Roy Howard* and *James R. Howard,* for appellee.

SAM ROBINSON, Associate Justice. This litigation involves the adoption of two children. The appellant, Jo Ann Richards, formerly Jo Ann Nesbitt, is the mother; Donald E. Nesbitt, one of the appellees, is the father. On August 8, 1962, the Probate Court of Pulaski County, First Division, acting on authority of Ark. Stat. Ann. § 56-106 (1947), appointed Ruth Johnston, Director of Child Welfare for the State of Arkansas, as guardian of

the children, with full authority to consent to adoption without notice to or consent of the natural parents.

On October 9, 1962, Mr. and Mrs. C. R. Nesbitt, parents of Donald E. Nesbitt, father of the children, filed a petition in the Pulaski Probate Court asking that the order authorizing the adoption be set aside and that they be granted custody of the children. The natural mother, Jo Ann, filed a response resisting the petition. Miss Johnston, guardian of the children, did likewise. Seven months later, on May 23, 1963, Donald Nesbitt filed a petition concurring in the petition previously filed by his parents.

On August 8, 1963, one year after the date of the original order appointing the guardian and giving her authority to consent to adoption, the probate court granted the petition to set aside the order authorizing the adoption. The natural mother, Jo Ann Richards, and Miss Johnston, the guardian, have appealed.

In cases, involving custody of children, we have held repeatedly that the interest of the child is the first thing to be considered. *Carr* v. *Hall*, 235 Ark. 874, 363 S. W. 2d 223; *Benson* v. *Benson*, 237 Ark. 234, 372 S. W. 2d 263. Here, the custody of the children is involved; they have been placed with people who are seeking to adopt them. Appellees are endeavoring to prevent the adoption.

To avoid confusion with regard to appellee, Donald Nesbitt, father of the children, and his parents, appellees, Mr. and Mrs. C. R. Nesbitt, we will refer to the father of the children as Donald, and refer to appellant, Jo Ann Richards, the natural mother, as Jo Ann.

Donald and Jo Ann were divorced in 1960. Jo Ann was awarded custody of the children, and Donald was ordered to pay $100.00 per month as child support. It appears that for about four months following the divorce he paid nothing. Finally, Jo Ann was permitted to move with the two children into an apartment owned by Donald's mother, Mrs. C. R. Nesbitt. Jo Ann was not charged any rent, but neither did Donald pay the $100.00 per

month support for the children. The arrangement really amounted to Jo Ann paying Mrs. Nesbitt $100.00 per month rent for the apartment, which appears to be mighty high rent considering that Jo Ann worked five days a week to support herself and the children.

In the meantime, Donald married again, his new wife having three children, and after her two children were placed for adoption, Jo Ann married again.

Along about April, 1962, Jo Ann's situation became desperate; she was in poor health and had to undergo surgery. Her doctor advised her to rest as much as possible.

The United Fund of Little Rock, a charitable organization, maintains what is known as a Family Service Agency. One of the functions of the Agency is to counsel with and assist people in Jo Ann's predicament. In April, 1962, Jo Ann went to the Family Service Agency for help. As a result, Mrs. Dick, an employee of the Agency, got in touch with Donald. He came in and discussed the matter, promising to return; however, he did not return, and the Agency could not find him until the following July.

In an effort to relieve Jo Ann's condition as much as possible and give her a little rest, the Agency placed the children in a foster home for one week. During this time Jo Ann and Miss Nellie Reed of the Agency were discussing and considering some kind of permanent arrangement that would be for the best interest of the children. As heretofore mentioned, Donald could not be located.

About the first of June the children were again temporarily placed in a foster home. Finally it was decided that the children should be adopted by a good family who would love and care for them, and rear them in a proper manner. With this end in view, the matter was taken up with Ruth Johnston, Director of the Child Welfare Division of the State Department of Public Welfare. Miss Johnston agreed that the children should

be adopted and knew people who would love to have them and who met all the requirements of the State Welfare Department to qualify as adopting parents.

Miss Reed finally got in touch with Donald and presented the plan to him. He agreed that Miss Johnston be appointed guardian and agreed to the adoption. The agreement was in writing, subscribed and sworn to before a notary public. Donald's consent, however, was not necessary because the adoption was under paragraph 4 of Ark. Stat. Ann. § 56-106 (1947).

Miss Johnston filed a petition in probate court asking that she be appointed guardian with authority to consent to the adoption. Among other things, the petition alleges: "Appointment of a guardian is sought because the parents of said children are unfit to properly care for the children and will not be able to care for said children. That said children are entitled to the love and affection of a normal Arkansas home. The Child Welfare Division has a home to place the children where the children will receive the finest care, love and affection." The petition was granted. The children were placed for adoption with a family living in some county other than Pulaski, and adoption proceedings were instituted in that county.

A year later, the Probate Court of Pulaski County set aside the order authorizing Miss Johnston, the guardian, to consent to the adoption. As heretofore mentioned, the natural mother, Jo Ann, and the guardian have appealed.

The probate court set aside the order authorizing the adoption principally on Donald's testimony that he gave his consent to the adoption in the first place because he thought he would go to jail for contempt of court because of his failure to abide by the court's order to pay monthly support for the children. The answer to that contention, however, is that his consent was not necessary in the first instance, and the order of the probate court so provides. The order states: "IT IS THEREFORE CONSIDERED, ORDERED AND AD-

JUDGED THAT said Ruth Johnston, Director of Child Welfare, be and hereby [of the two minor children, Kimberly Dawn and Donald Mark Nesbitt] is appointed guardian of the person and estate with full right and authority to consent to adoption, without notice to or consent of the Natural Parent, or Parents; . . .''

Moreover, Donald does not now say that he can or will support the children if the adoption is blocked. In fact, he does not want the children. He testified that they would be a burden to him; he would depend on his parents to support and rear the children. There is no showing that his parents are suitable for that purpose. Furthermore, it does not appear that Jo Ann, who knows Donald's parents, would consent to them having custody of the children, and there is nothing to indicate that the court would take the children away from Jo Ann without her consent. Donald and his parents gave Jo Ann insufficient help, if any at all, when she was in dire need of it. She consented to the adoption because in her opinion, and in the opinion of Miss Reed and Miss Johnston, it was the best thing for the children.

Appellees rely to a large extent on the case of *Combs* v. *Edminston*, 216 Ark. 270, 225 S. W. 2d 26. There, a young unwed mother had given consent to the adoption of the baby on the night the baby was born and was allowed to withdraw such consent before the entry of an interlocutory order. And in *Martin* v. *Ford,* 224 Ark. 993, 277 S. W. 2d 842, it is pointed out that consent may be withdrawn before the making of an interlocutory order. But those cases are not in point with the case at bar even though no interlocutory order of adoption had been entered in the county where that proceeding was pending until after the commencement of this action.

In the two above mentioned cases, no condition existed whereby, under the provisions of the statute, the consent of the parents could be dispensed with. Not so in the case at bar. Here, the adoption is controlled by paragraph 4 of Ark. Stat. Ann. § 56-106 (1947), which provides that the consent of the parents is not necessary where: ''a guardian of the child has been appointed by

an order of the Probate or Juvenile Court giving the guardian authority to consent to adoption without notice to or consent of the child's natural parents. In this case, the written, verified consent of the guardian shall be sufficient.'' In the case at bar, a guardian of the children had been appointed by order of the probate court and the guardian had been given authority to consent to the adoption without notice to or consent of the children's natural parents; therefore, under the provisions of the statute, Donald's consent was wholly unnecessary.

In the original order it is stated that it is to the best interest of the children that the Director of Child Welfare be appointed guardian with power to consent to adoption. The evidence fully bears out that finding, and the court was in error in setting aside the order giving the guardian authority to consent to the adoption.

Reversed with directions to enter a judgment not inconsistent herewith.

WARD, J., dissents.

HOLT, J., not participating.

PAUL WARD, Associate Justice (dissenting). My dissent is based on the points or issues hereafter set out.

*One.* The second paragraph on page 2 of the typewritten opinion indicates to me the majority consider this to be a child custody case. The two cases cited, as showing that ''the interest of the child is the first thing to be considered,'' are chancery cases, while the case here is appealed from the probate court. This is not a custody case, and the trial court so held, stating: The probate court ''has no jurisdiction to act upon the custody of the children involved herein.'' Yet, on page 4 of the opinion, the majority again state: ''But, as we heretofore pointed out, the first consideration is the welfare of the children.'' It goes without argument that the welfare of the children will be the prime issue when the matter of adoption is considered in the chancery court. Hence, it appears to me the majority are relying heavily

(if not exclusively) on something that is not even an issue in this case.

*Two.* In my opinion, only one issue is presented by this appeal, and that issue involves purely a legal question—can a parent, who has consented (in writing)· to the adoption of his child, arbitrarily revoke such consent before a preliminary or interlocutory order of adoption has been entered in a chancery court?

First, it should be pointed out that there are two ways in which a parent may give his consent for adoption. (a) One, the parent gives his written verified consent for a person (known to him) to adopt his child—as set out in Ark. Stat. Ann. § 56-106 (1947). (b) The other (as here), the parent consents for the probate court to appoint a guardian for his child with "authority to consent to adoption . . ." to some person unknown to him. See § 56-106 (IV).

In the case under consideration we are dealing with situation (b) only. Naturally, if the probate order appealed from is affirmed (that is, if the father is allowed to withdraw his consent) then the adoption proceeding (in an unnamed county, in chancery court) must fail. The majority appear to fail to understand that the father has not *consented to the adoption of his children but has only consented to have Miss Johnston appointed guardian* (with power to consent).

My first position is that the father is no more firmly bound in one instance than the other. Certainly the majority has not proven (or even contended) otherwise. My second position is we have already clearly indicated that (before an interlocutory order of adoption has been entered in chancery court) the parent can *arbitrarily* withdraw his consent. It was so held in *Combs* v. *Edmiston,* 216 Ark. 270, 225 S. W. 2d 26, and in *Martin* v. *Ford,* 224 Ark. 993, 277 S. W. 2d 842.

It is true that the Probate Court had authority to take Donald's children away from him and appoint Miss Johnston guardian (with power to consent to adoption)

without his consent. In such case, however, it was necessary to have a trial at which Donald was present or of which he had notice. In the case under consideration no such trial was held. Miss Johnston filed her petition on August 8, 1962 and the order (appointing her) was signed the same day. If a trial was held (which is not shown) Donald had no notice. The same judge who made the order later set it aside and I believe he knew more about the facts and merits of the case than this Court could possibly know.