Charles GARRETT *v.* Jolene GARRETT

87-18                                              732 S.W.2d 127

Supreme Court of Arkansas
Opinion delivered July 6, 1987

*Davidson, Horne & Hollingsworth, A Professional Association*, for appellant.

*Witt Law Firm, P.C.*, by: *R. Kevin Barham*, for appellee.

JACK HOLT, JR., Chief Justice. This case is an appeal of a Franklin County Chancery Court order in which custody of the children of Charles and Jolene Garrett was awarded to Jolene, appellee. Charles, appellant, argues that the trial court should not have taken jurisdiction of the case because an Oklahoma court had previously entered an order granting custody to him and because he was not personally served with notice of the Arkansas proceedings. We reverse and dismiss.

The events leading to the Arkansas court's decree are as follows: Charles and Jolene Garrett were married in Clarksville, Arkansas, on May 29, 1982, and immediately moved to Miami, Oklahoma. On August 11, 1986, the couple separated. Charles left their two children, ages three and two, with Jolene and went to his parents' home in Miami. The next day, Jolene took the children to Altus, Arkansas, and moved in with her parents. Two days later, on August 13, Jolene filed a complaint in Franklin County, Arkansas, asking for custody of the children. On August 15, Charles filed a petition for divorce in Ottawa County, Oklahoma, asking for custody of the children. The Oklahoma court entered an order the same day giving him temporary custody.

On September 9, the Arkansas court entered an order giving temporary custody to Jolene. Charles filed a special entry of appearance in the Arkansas court, in which he challenged the court's jurisdiction. Jolene also entered a special appearance in the Oklahoma court to challenge that court's jurisdiction.

On September 18, the Oklahoma court, after a hearing in which both parties were present and represented by counsel, found that it had jurisdiction as the "home state" as defined by

the Uniform Child Custody Jurisdiction Act (UCCJA) and continued in force its temporary order of custody in Charles. The order recited that the trial judge had, pursuant to the UCCJA, communicated by telephone with the chancellor presiding over the Arkansas proceedings, and that he had informed the Arkansas chancellor that he invoked jurisdiction over the parties and the children. On September 26, the Oklahoma court entered a final decree of divorce and awarded custody to Charles. The Oklahoma court decree stated that it had sole and exclusive jurisdiction under the UCCJA as enacted by both Oklahoma and Arkansas. No appeal was taken from the Oklahoma court decree.

The UCCJA provisions on jurisdiction relied on by the Oklahoma court, codified in Arkansas as Ark. Stat. Ann. § 34-2703 (Supp. 1985), state:

> (a) A court of this State which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
>
> (1) this State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this State because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this State; or
>
> (2) it is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and his parents, or the child and at least one [1] contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence concerning the child's present or future care, protection, training, and personal relationships; . . . .

"Home state" is defined as

> the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six (6) consecutive months, . . . .

Ark. Stat. Ann. § 34-2702(5) (Supp. 1985).

The Arkansas court, after a hearing in which the Oklahoma decree was put into evidence, nevertheless found that it had jurisdiction pursuant to paragraph (2) of § 34-2703, inasmuch as the parties had a significant contact with the state because Jolene and the children were residing in Arkansas, Jolene was raised in Arkansas, and the parties lived here for a substantial time before their marriage and were married here. The order also said that there was available in this state substantial evidence concerning the children's present and future care, protection, training, and personal relationships and that it was to the best interest of the children that this court assume jurisdiction. The order, entered on October 28, gave custody of the children to Jolene.

Under both the UCCJA and the Parental Kidnapping Prevention Act, 28 U.S.C. 1738A, (PKPA) the Arkansas court erroneously exercised jurisdiction. These two acts must be read in conjunction, and where they conflict, the preemptive PKPA controls. *Norsworthy* v. *Norsworthy*, 289 Ark. 479, 713 S.W.2d 451 (1986).

The scenario in this case, and the instability created for the family, is precisely what both of these acts were designed to prevent. Their stated purposes are to avoid jurisdictional conflict with courts of different states, to promote cooperation between courts so that the custody decree is rendered by the state which can best decide the case, to discourage continuing controversies over child custody, to deter abductions, and to avoid re-litigation of custody decisions. Ark. Stat. Ann. § 34-2701 (Supp. 1985); 28 U.S.C.S. 1738A (History; Ancillary Laws and Directives).

The PKPA seeks to minimize jurisdictional controversies by giving little leeway to the court of the second state when the home state enters an order regarding custody. Subsection (a) of the PKPA states:

> The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

Unlike the UCCJA, under the PKPA jurisdiction is given to the "home state" to the exclusion of other jurisdictional

considerations. 28 U.S.C. 1738A(4); *Norsworthy, supra.* Because Oklahoma was clearly the home state under the PKPA, which defines that term just as the UCCJA does, the Oklahoma decree was entitled to enforcement in the Arkansas court under the PKPA.

The same result follows from the UCCJA. It is true that the UCCJA allows alternate means of jurisdiction other than in the home state when it is in the best interest of the children. There must be a "significant connection" with this state, and there must be "available in this state substantial evidence concerning the child's present and future care, protection, training and personal relationships." In *Norsworthy*, however, where an Arkansas court exercised jurisdiction under the same section utilized here, we stated that this provision, "while broad, must be judiciously applied, and it should not be regarded as giving a court only recently involved an excuse to act precipitously, in an ex parte proceeding, by disregarding the remainder of the act, so plainly aimed at promoting cooperation between courts. Particularly is that true where, as here, Texas clearly remained the home state."

The Garretts had lived in Oklahoma the entire time they were married, the children were born there and lived there until Jolene took them to Arkansas two days before she filed for custody, and Charles and his family remained in Oklahoma. The Arkansas court erred in disregarding the fact that Oklahoma remained the "home state" for jurisdictional purposes. Accordingly, the Oklahoma decree must be enforced in the Arkansas courts.

Both parties allege that the decree obtained by the other was not entitled to enforcement because they were not personally served with notice. Arkansas and Oklahoma have the same notice requirements under the UCCJA for out-of-state defendants:

(a) Notice required for the exercise of jurisdiction over a person outside this State shall be given in a manner reasonably calculated to give actual notice, and may be:

(1) by personal delivery outside this State in the manner prescribed for service of process within this State;

(2) in the manner prescribed by the law of the place in which the service is made for service of process in that place

in an action in any of its courts of general jurisdiction;

(3) by any form of mail addressed to the person to be served and requesting a receipt; . . .

(c) Proof of service outside this State may be made by affidavit of the individual who made the service, or in the manner prescribed by the law of this State, the order pursuant to which the service is made, or the law of the place in which the service is made. If service is made by mail, proof may be a receipt signed by the addressee or other evidence of delivery to the addressee.

Ark. Stat. Ann. § 34-2705 (Supp. 1985).

An affidavit of personal service was entered into the record, in which the affiant states he personally delivered a copy of the Oklahoma summons and temporary order to William Gray, Jolene's father, at his usual place of residence in Altus. Jolene stated that she remembered a man throwing a bundle of papers on her porch which said Charles had filed for divorce. The service on her was "reasonably calculated to give actual notice" of the Oklahoma proceeding, and Jolene poses no convincing argument why the service on her father at the home where she was living was not adequate for this purpose.

As we have found that the Arkansas court should not have taken jurisdiction over the parties under the provisions of the PKPA and the UCCJA, it is not necessary for us to reach the issue of the notice given Charles of that proceeding.

Reversed and dismissed.