Marchele (Richardson) MOORE *v.* Curtis RICHARDSON

97-636 964 S.W.2d 377

Supreme Court of Arkansas
Opinion delivered March 12, 1998

*Amy Blackwood*, for appellant.

*Dale Arnold*, for appellee.

RAY THORNTON, Justice. Appellant Marchele (Richardson) Moore brings this appeal from the ruling of the Sebastian County Chancery Court finding her in contempt for violation of its child-visitation order. For reversal, Ms. Moore argues that the chancery court's order finding her in contempt was void for want of jurisdiction both under the Parental Kidnapping Prevention Act of 1980 (PKPA) and the Uniform Child Custody Jurisdiction Act (UCCJA), and because appellee Curtis Richardson voluntarily submitted himself to a Texas court's jurisdiction. We hold that the Arkansas court properly exercised continuing jurisdiction and affirm.

The Sebastian County Chancery Court entered a decree of divorce on February 2, 1993, granting Ms. Moore and Mr. Richardson an absolute divorce. The chancery court also awarded Ms. Moore custody of the parties' minor daughter, required Mr. Richardson to pay child support, and awarded him visitation rights.

Ms. Moore filed a petition for modification of this order on October 25, 1995, requesting that the court terminate visitation because Mr. Richardson was being investigated for allegedly abusing the child, and she also requested the court's permission to move to Seymour, Texas, with the child. Debra Brown, a licensed psychological examiner, testified that these allegations had been investigated by the Arkansas Department of Human Services (DHS) and local law enforcement, who decided that the allegations did not warrant further action.

By order dated March 26, 1996, the chancery court granted Ms. Moore permission to move after May 15, but denied her request to terminate visitation with the child's father. The court modified the visitation to require that all future visits be supervised and limited visitation to one weekend a month once Ms. Moore and the child moved to Texas. The court also held Mr. Richardson in contempt for nonpayment of child support.

Mr. Richardson filed a petition in July 1996, requesting that the court hold Ms. Moore in contempt for violating the March order when she cut off all visitation after the move to Texas. In her counterclaim, Ms. Moore contended that Mr. Richardson had failed to pay child support, asserted that the visitation was not properly supervised, and alleged that the child had told Texas DHS workers that she had been physically and emotionally abused after the Arkansas court had ordered that the visits be supervised. Ms. Moore attached copies of affidavits from Rachel Oquendo, a child sexual-assault counselor at First Step in Texas. She also responded that an active DHS case was pending in this matter in Texas, and if she allowed visitation, action would be taken against her by the Texas DHS.

A hearing was held in Sebastian County on October 21, 1996, at which time the court heard testimony from both parents

and conducted an *in camera* interview with the child. In its October 22 order, the court expressed its reluctance to modify the supervised visitation ordered the previous March, where the court had concluded that the child was not in danger. The court then found that the allegations of child abuse in both Arkansas and Texas had not been substantiated, and decided that it would not cut off the child's natural father's visitation rights on the basis of the evidence and testimony presented. However, the chancery court stressed that visitation be supervised at all times by Mr. Richardson's mother, Martha O'Neal, or by Mr. O'Neal, her husband.

On November 25, 1996, a Texas court issued an *ex parte* protective order finding that Ms. Moore was in "clear and present danger of family violence" and ordering Mr. Richardson to appear at a hearing in Seymour, Texas, on December 17, 1996, to show cause why this order should not become permanent. The emergency order was effective for twenty days. Mr. Richardson made a general appearance on December 17, and provided the Texas court with a certified copy of the Arkansas court's October order.

On January 3, 1997, Mr. Richardson filed a motion for contempt in Sebastian County, asserting that he was being denied visitation and that Ms. Moore was seeking to have the State of Texas assume jurisdiction to modify visitation. Mr. Richardson's attorney called the court's attention to a hearing scheduled by the Texas court for February 3, 1997, to consider whether to terminate Mr. Richardson's parental rights.

Chancellor Harry Foltz, who had been exercising continuing jurisdiction in the Arkansas court, sent Judge David Hajek of the 50th judicial district in Seymour, Texas, a letter dated January 17, 1997, attempting to resolve an apparent jurisdictional conflict. In the letter, Chancellor Foltz stated his belief that the Arkansas court retained jurisdiction in the case under 28 U.S.C. § 1738A(d) (1994), because the father continued to reside in Arkansas and the original custody determination was made in compliance with the provisions of the PKPA and the UCCJA. He informed the Texas court that he had a pending motion for contempt before him, set

for hearing on March 13, and requested a response from Judge Hajek.

Ms. Moore filed a motion to dismiss the contempt proceeding on March 4, 1997, alleging that the chancery court (1) did not have personal jurisdiction over the parties, (2) did not have subject-matter jurisdiction over the issue, and (3) could not act because another action was pending between the same parties arising out of the same transaction or occurrence. In her brief in support of her motion to dismiss, Ms. Moore alleged that the Texas court now has jurisdiction over this proceeding. Ms. Moore attached a copy of the protective order that the Texas court entered on February 11, 1997, stating that both parties made a personal appearance on December 17, 1996, and finding that the Texas court properly had jurisdiction over the matter. The Texas court found that Mr. Richardson had committed family violence since the last Arkansas court order, and that it was in the child's best interest to prohibit Mr. Richardson from contacting or approaching the child and Ms. Moore, except within the parameters approved by the court. The Texas court separately modified visitation, ordering that it occur only under the supervision of Diana Lochridge, a licensed professional counselor in Texas.

After the March 13 hearing, the Arkansas court entered an order setting forth its findings. In its March 17 order, the court denied Ms. Moore's motion to dismiss for lack of jurisdiction, stating that it had had jurisdiction over this case and these parties since it entered the initial divorce complaint in 1993, and had exercised this jurisdiction as recently as October 22, 1996, when Ms. Moore, as well as Mr. Richardson, had requested and received relief from the Arkansas court. In the order, the Arkansas court claimed to have jurisdiction under the PKPA, 28 U.S.C. § 1738A(d). The court also stated that it had attempted to comply with the provisions of the UCCJA requiring that two courts involved in simultaneous proceedings communicate with one another, but that the Texas court did not respond. *See* Ark. Code Ann. § 9-13-206 (Repl. 1993). The court found Ms. Moore in contempt for violation of its visitation orders and for failing to appear in violation of its January 3 order to show cause. The court ordered the sheriff to incarcerate Ms. Moore until a hearing

could be held to determine if she should be released, or until she posted a $2,500 bond to insure her presence at the next hearing. From this order, Ms. Moore brings this appeal.

Ms. Moore argues that the Arkansas court erred in ruling that it had continuing jurisdiction because Mr. Richardson, through his general appearances before the Texas court on December 17 and February 7, "submitted himself and fully engaged in the litigation process." She states that, by his appearance, he acquiesced and waived his right to object to the Texas court's assumption of jurisdiction.

Ms. Moore also contends that the Texas court properly had jurisdiction under the PKPA, even though Arkansas had original jurisdiction under the UCCJA. She alleges that the Texas court correctly exercised jurisdiction for two reasons, citing 28 U.S.C. § 1738A(c): (1) because Texas is now the "home state" of the child and is therefore given jurisdictional preference under the PKPA, and 28 U.S.C. § 1738A(c)(2) because it was necessary to protect the child from continued mistreatment or abuse under the "emergency jurisdiction" provision of the PKPA.

Ms. Moore attempts to analyze jurisdiction in terms of whether Mr. Richardson's appearance before the Texas court waived his right to object to jurisdiction, mischaracterizing the issue as one of personal jurisdiction, rather than an issue of subject-matter jurisdiction, which is a defense that cannot either be waived by the parties at any time or conferred by the parties' consent. *See* Ark. R. Civ. P. 12(h)(3). Under the PKPA and UCCJA, child-custody jurisdiction is a matter of subject-matter jurisdiction. 1 Jeff Atkinson, *Modern Child Custody Practice* § 3.31, at 175 (1986). Therefore, the fact that Mr. Richardson may have entered a general appearance before the Texas court does not waive his right to contest the Texas court's subject-matter jurisdiction. *See, e.g., McBride v. McBride,* 688 So.2d 856 (Ala. Ct. Civ. App. 1997) (stating that the UCCJA provisions relate to subject-matter jurisdiction, which cannot be vested by the parties even if all parties consent and request an adjudication on the merits).

When dealing with state conflicts over child-custody jurisdiction, we analyze the facts under the provisions of the

UCCJA and PKPA. *Snisky v. Whisenhunt*, 44 Ark. App. 13, 17, 864 S.W.2d 875, 878 (1993). Orders providing for visitation or modifying visitation come within the PKPA's definition of "custody determinations." *Id.*; 28 U.S.C. § 1738A(b)(3). Where the UCCJA and PKPA conflict, the PKPA preempts. *Garrett v. Garrett*, 292 Ark. 584, 587, 732 S.W.2d 127, 128 (1987). Congress was seeking to minimize jurisdictional conflicts such as this one when it enacted the PKPA. *Id.* The Act specifically mandates that:

> The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

28 U.S.C. § 1738A(a).

█ Under these terms of the PKPA, the Texas court should not have taken jurisdiction to modify the custody or visitation order of the Arkansas court unless it met the following two conditions under subsection (f): (1) Texas must have jurisdiction under one of the criteria of 1738A(c), and (2) the Arkansas court that issued the initial custody order must have either declined jurisdiction or no longer had jurisdiction. In this case, Texas did specifically determine that it had jurisdiction under subsection (c)(2)(A) as the home state of the child; however, under the second prong of subsection (f), Texas was not permitted to exercise jurisdiction unless the Sebastian County Chancery Court had declined to exercise jurisdiction, or no longer had jurisdiction.

Because the Arkansas court had clearly not declined to exercise jurisdiction, we consider only whether the court no longer had jurisdiction. Ms. Moore claims that the Arkansas court erroneously attempted to retain jurisdiction under subsection (c)(2)(A) of the PKPA. On the contrary, Chancellor Foltz stated in his March 17, 1997, order that the chancery court retained continuing jurisdiction in the case under 28 U.S.C. § 1738A*(d)* because the father continued to reside in Arkansas and the original custody determination was made in compliance with the provision of the PKPA and the UCCJA. The chancery court was correct.

■ Subsection (d) of the PKPA holds great importance in child-custody determinations because in it Congress expressly declared that the "jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant." Subsection (c)(1) provides that a "child custody determination made by a court of a State is consistent with the provisions of this section only if — such court has jurisdiction under the law of such State."

■ The Arkansas court must have had jurisdiction under its state UCCJA, Ark. Code Ann. § 9-13-201 to -228 (Repl. 1993), in order to continue to exercise jurisdiction. Under our UCCJA, the Sebastian County Chancery Court clearly had jurisdiction to modify its February 1993 order, the original order granting custody and visitation. Section 9-13-203 provides:

> A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
> (1) This state (i) is the home state of the child at the time of commencement of the proceeding, . . . .

Ark. Code Ann. § 9-13-203(a)(1). At the time of the divorce decree, the child had lived in Arkansas all of her life. Although Ms. Moore later removed herself and the child, Mr. Richardson continues to reside in Sebastian County and that county's chancery court has continued to exercise its jurisdiction and has modified its original order on several occasions, at both parties' requests. We conclude that the requirements of subsection (c)(1), and therefore of subsection (d), of the PKPA have been met.

■ Because we have determined that the Arkansas court had neither declined nor lacked jurisdiction to modify its initial visitation decree, we conclude that the Texas court does not have jurisdiction under 28 U.S.C. § 1738A(f).

■ We note that at the hearing before the Sebastian County Chancery Court on March 13, Ms. Moore's counsel alleged that perhaps the Texas court was exercising concurrent jurisdiction. The PKPA expressly provides that a court cannot

exercise jurisdiction in a proceeding if a court in another state is exercising jurisdiction consistent with the provisions of the PKPA. 28 U.S.C. § 1738A(g). The purpose of this provision is to avoid "the havoc wreaked by simultaneous and competitive jurisdiction." *Murphy v. Danforth*, 323 Ark. 482, 490, 915 S.W.2d 697, 702 (1996); *see also Atkins v. Atkins*, 308 Ark. 1, 823 S.W.2d 816 (1992). However, one state may assume jurisdiction and become an alternate forum where the initial state declines to exercise its jurisdiction. *See Snisky v. Whisenhunt*, 44 Ark. App. 13, 864 S.W.2d 875 (1993).

 Ms. Moore argues that the Texas court's jurisdiction takes precedence because Texas is now the "home state" of the child, a status that is given priority under the PKPA. However, we have stated that we give priority to jurisdictional bases under the PKPA in the following order:

> (1) continuing jurisdiction; (2) home-state jurisdiction; (3) significant-connection jurisdiction; and (4) jurisdiction when no other jurisdictional basis is available.

*Murphy v. Danforth*, 323 Ark. at 490, 915 S.W.2d at 701 (citing 28 U.S.C. § 1738A(c); Atkinson, *Modern Child Custody Practice* § 3.24, at 165). Even if the Texas court is now the home state of the child, the Arkansas court properly exercised continuing jurisdiction because that basis has priority over home-state jurisdiction under the PKPA.

Ms. Moore also claims that the Texas court assumed emergency jurisdiction to protect the minor child from continued abuse or mistreatment, based on the child's allegations.

 The PKPA provides for emergency jurisdiction as a means for a state that does not possess exclusive continuing jurisdiction to enter a temporary order until the state with continuing jurisdiction is able to determine the issues. Roger M. Baron, *Federal Preemption in the Resolution of Child Custody Jurisdiction Disputes*, 45 ARK. L. REV. 885, 910 (1993). The PKPA and UCCJA both contain almost identical provisions that allow a court to exercise emergency jurisdiction when the child is physically present and a genuine emergency, such as abandonment or abuse, exists. *Murphy v. Danforth*, 323 Ark. at 491, 915 S.W.2d at 702 (citing 28

U.S.C. § 1738A(c)(2)(C); Ark. Code Ann. § 9-13-203(a)(3)). Jurisdiction based on an emergency under our version of the UCCJA may only be used in extreme or extraordinary situations where the immediate health and welfare of the child is at stake. *Caskey v. Pickett,* 274 Ark. 383, 386, 625 S.W.2d 473, 475 (1981).

 We have stated that emergency powers are limited and should not be used to permanently modify a custody order. *Murphy v. Danforth,* 323 Ark. at 491, 915 S.W.2d at 702. Rather, they should only be used to give a party custody for as long as it takes to travel with the child to the proper forum to seek a permanent modification. *Id.* "Emergency jurisdiction may be exercised independently of the order of preferences, but relief under emergency jurisdiction would normally be only temporary and the parties would be directed to return to a court with the most preferred jurisdictional basis." Atkinson, *Modern Child Custody Practice* § 3.01, at 109.

In *Murphy,* we quoted passages from Professor Atkinson's treatise in which he suggests that a state exercising emergency jurisdiction might act to permanently modify an order where the evidence of neglect or abuse is available in that state, but difficult or impossible to obtain in the child's home state. *Murphy v. Danforth,* 323 Ark. at 491, 915 S.W.2d at 702 (quoting Atkinson, *Modern Child Custody Practice* § 3.18, at 148, n. 170). However, Professor Atkinson advises that this problem may be avoided by taking testimony and transmitting the evidence to the other state. *Id.*

In this case, the Arkansas court had affidavits before it from Texas counselors and social workers, as well as Arkansas psychological evaluations, on which it relied in its order requiring that the child's visits with her father be supervised at all times. The Arkansas court had the benefit of evaluations and reports made both in Texas and in Arkansas; therefore, a permanent modification by the Texas court was not appropriate if Texas was exercising authority under the emergency-jurisdiction provisions of the PKPA.

 Ms. Moore argues that an emergency existed that required her to turn to the Texas court for relief, and the Texas

court specifically stated in its order that an emergency existed because of the family abuse. However, under the PKPA and our case law, if a true emergency did exist, the Texas court possessed only the *limited* jurisdiction to give relief for the period of time that it took Ms. Moore to go to the appropriate forum to seek permanent modification of the custody order. While its protective order issued on November 17, 1996, may have been a proper exercise of emergency jurisdiction, its order dated February 11, 1997, clearly attempted to modify visitation in excess of those limited terms. It appears that at all times, the child remained in Ms. Moore's custody and was apparently safe. Under these circumstances, she should have sought relief from the Arkansas court, from which she had sought relief several times before, as the court with preferred jurisdiction to permanently modify visitation.

In summary, the Arkansas court, which entered the initial custody and visitation order, retained continuing jurisdiction over the subject-matter and parties in this case under the PKPA and our state's UCCJA. Because the Arkansas chancery court had continuing jurisdiction that it had not declined to exercise, the Texas court was without jurisdiction to permanently modify the Arkansas court's order. Even if the facts had shown that there was a need to exercise emergency jurisdiction, the Texas court's order went beyond the scope of emergency jurisdiction under the PKPA.

Affirmed.