Travis Vincent PEREZ, Jr. *v.*
Donna Sue Ellis TANNER

97-668 965 S.W.2d 90

Supreme Court of Arkansas
Opinion delivered March 19, 1998

*Rice, Adams & Pace, P.A.*, by: *Ben E. Rice*, for appellant.

*Kelly & Huckabee*, by: *Sandy Huckabee*, for appellee.

RAY THORNTON, Justice. This case involves a jurisdictional dispute between conflicting decrees of Arkansas and Mississippi courts in a child-custody matter. Travis Vincent Perez and Donna Sue Ellis Tanner lived together in Mississippi for approximately five years. During this time, Mrs. Tanner gave birth to a daughter, C.P., and a son, T.V., in 1989 and 1990 respectively. Although both parties acknowledge Mr. Perez as the biological father of these children, the parties have never been married to one another and no court has issued an order establishing paternity.

The initial pleadings relating to custody of the minor children were filed in the Jackson County, Mississippi, Chancery Court on January 16, 1992. At various times, each party has been awarded custody in the context of approximately sixteen different Mississippi court orders. As the Mississippi court exercised continuing jurisdiction over custody and visitation proceedings under the provisions of the Parental Kidnapping Prevention Act of 1980

(PKPA) and the Uniform Child Custody Jurisdiction Act (UCCJA), we reverse and dismiss.

In November 1995, allegations surfaced that Mr. Perez's brother had sexually abused C.P. An Alabama hospital examination on November 10 revealed no evidence of abuse; however, in a November 14 examination, Dr. John Shriner, an Alabama pediatrician, found evidence of abuse. Consequently, on December 21, the Mississippi court ordered Mr. Perez's visitation restricted to his sister's home in Mississippi and ordered Mr. Perez's brother to not have any contact with C.P. On March 13, 1996, Mr. Perez's brother appeared before a grand jury in Mississippi that returned a decision not to indict him on charges of child molestation.

A hearing was scheduled in Mississippi for March 6, but two weeks before that date, Mrs. Tanner, who had custody of the children pursuant to a previous Mississippi court order, moved to Arkansas. On March 4, 1996, two days before the hearing scheduled in Mississippi, Mrs. Tanner petitioned the Lonoke County, Arkansas, Chancery Court to suspend Mr. Perez's visitation in an *ex parte* proceeding. The Arkansas court granted Mrs. Tanner's petition on that same date.

A hearing was held in Mississippi on March 6, and Mrs. Tanner did not appear. In its May 9 order, the Mississippi court issued a temporary order finding Mrs. Tanner in contempt for failing to appear and for violating its order in refusing to honor Mr. Perez's visitation rights. The Mississippi court found that it had continuing jurisdiction over the matter, awarded Mr. Perez temporary custody of both children, and directed that Mr. Perez's brother have no contact with the children until a full evidentiary hearing could be held. The court made this temporary order a permanent one in an order filed June 29, 1996. No appeal was taken from this Mississippi order.

In an April 1996 letter, Mr. Perez advised the Arkansas court that Mrs. Tanner had requested similar modifications in two other states. He further claimed that an Alabama court declined jurisdiction in January 1996, on the basis that the Mississippi court retained jurisdiction.

On July 9, 1996, Mr. Perez filed a motion in the Arkansas court challenging its exercise of jurisdiction in this case and asking the court to give full faith and credit to the rulings of the Mississippi court giving him custody of the children. In her reply, Mrs. Tanner urged that Mr. Perez had submitted to the Arkansas court's jurisdiction by requesting that the court award him visitation. She also counterpetitioned, requesting that the Arkansas court find Mr. Perez in contempt for failure to pay child support as ordered by the Mississippi court.

The Arkansas court heard testimony on the issue on August 22, 1996. In its September 17 order, the Arkansas court decided to maintain jurisdiction until home studies could be conducted on both parties and allowed Mr. Perez to have visitation in the office of the children's counselor and via telephone. The home studies were filed with the court and indicated that both parents could provide a suitable home.

On February 25, 1997, the Arkansas chancery court issued a ruling stating that the court accepted and retained jurisdiction in this matter under Ark. Code Ann. section 9-13-203(a)(3) (Repl. 1993), the emergency-jurisdiction provision of the UCCJA. The court noted that the Mississippi court orders granted "paramount custody, care and control" of the children to Mrs. Tanner from the time the older child entered first grade, which she did in the 1995-96 school year. The Arkansas court awarded full custody to Mrs. Tanner.

The Arkansas court also refused to extend full faith and credit to the Mississippi orders because it found that Mr. Perez was a "stranger" to the children under Arkansas law. The court refused to recognize the validity of the Mississippi court's orders. The Arkansas court reasoned that giving visitation and/or custody to a putative father whose paternity has not been established in accordance with the requirements of our Code violated Arkansas law, notwithstanding that the paternity determination complied with Mississippi law. The court also refused to hold Mr. Perez in contempt for nonpayment of child support on the basis that Arkansas law does not provide for an award of support against a putative father until after a judicial decree establishes paternity.

Mr. Perez filed a motion in the Arkansas court for a new trial on March 6, 1997, which the court denied. Mr. Perez appeals this order of the Lonoke County Chancery Court. Mr. Perez raises four points on appeal. Because our analysis of the first and third points is similar, we address those points together.

In points one and three, Mr. Perez argues that the Full Faith and Credit Clause, the PKPA, and Arkansas's UCCJA require the Arkansas chancery court to give full faith and credit to the Mississippi chancery court's orders. We agree.

■ Jurisdiction over child-custody disputes is governed by two acts, the UCCJA, Ark. Code Ann. §§ 9-13-201 to -223 (Repl. 1993), and the federally preemptive PKPA, 28 U.S.C. § 1738A (1994). Issues of child visitation are considered under the definition of "custody determination." 28 U.S.C. § 1738A(b)(3); Ark. Code Ann. § 9-13-202(2). The PKPA applies directly to modification proceedings; however, it also indirectly governs initial custody determinations. *Atkins v. Atkins*, 308 Ark. 1, 823 S.W.2d 816 (1992). We have stated that this is due to the fact that the PKPA does not accord a custody decree full faith and credit in another state if the decree failed to conform to the requirements of the PKPA. *Id.*

■ The purposes stated in our UCCJA include avoiding jurisdictional conflicts with other state courts and avoiding the relitigation of custody decisions made in other states. Ark. Code Ann. § 9-13-201. We have previously looked to the Florida appeals court for guidance and quoted the following with respect to the purposes of the UCCJA: "Those purposes are not served when a court, with knowledge that the subject matter of child custody is pending in another state, totally ignores the foreign proceeding and exercises jurisdiction over a child, who has been in the state for less than a month, for the purpose of making a permanent award." *Norsworthy v. Norsworthy*, 289 Ark. 479, 486, 713 S.W.2d 451, 455 (1986) (quoting *Bonis v. Bonis*, 420 So.2d 104 (Fla. Dist. Ct. App. 1982)).

■ Based on these principles of law, we first consider whether the Arkansas court properly took jurisdiction in this case under the PKPA and UCCJA. Before a state may exercise juris-

diction in a custody or visitation dispute, it must determine whether a sister state is exercising jurisdiction. Under the PKPA, if a state finds that another action is pending, the state must look to subsection (g). Subsection (g) provides that a state shall not exercise jurisdiction in a custody proceeding that is commenced while a proceeding is pending in a sister state, which is exercising jurisdiction consistent with the PKPA. 28 U.S.C. § 1738A(g). This provision means that no two states shall exercise concurrent or simultaneous jurisdiction.

■ The PKPA provides that a court may modify a custody order of a sister state only if two criteria are met. First, the court must determine that it has jurisdiction to make child-custody determinations. 28 U.S.C. § 1738A(f)(1). Second, the court of the sister state must no longer have jurisdiction or must have declined to exercise jurisdiction to modify the order. 28 U.S.C. § 1738A(f)(2). If the sister state still has jurisdiction under the laws of that state and the state remains the residence of one of the parties or the child, then the sister state retains continuing jurisdiction and the other court shall not modify the order. 28 U.S.C. § 1738A(d).

■ Turning to the second criterion, we look at whether the sister state had proper jurisdiction to enter the initial decree. Mississippi has adopted a version of the UCCJA, Miss. Code Ann. §§ 93-23-1 to 93-23-47 (Supp. 1993). Under its UCCJA, the Mississippi chancery court may exercise jurisdiction where Mississippi is the "home state of the child at the time of commencement of the proceeding." Miss. Code Ann. § 93-23-5(1)(a). Additionally, the PKPA gives priority to home-state jurisdiction in *initial* custody determinations. *Garrett v. Garrett*, 292 Ark. 584, 732 S.W.2d 127 (1987); *see also* 1 Jeff Atkinson, *Modern Child Custody Practice* § 3.01, at 106. In this case, when the initial proceeding was commenced in 1992, Mississippi had been the residence of both children since their birth. Therefore, Mississippi properly exercised its home-state jurisdiction under both the UCCJA and the PKPA in entering the initial custody order.

Having decided that the Mississippi court had original jurisdiction in this dispute, we next determine whether the Mississippi

court had declined to exercise jurisdiction or no longer had jurisdiction. *See* 28 U.S.C. § 1738A(f). Under the Mississippi Code, the Mississippi court could have declined to exercise jurisdiction to modify its own order if it had found that Mississippi was an inconvenient forum and that the court of another state was more convenient. Miss. Code Ann. § 93-23-13(1). The Mississippi court may make this determination upon its own motion, or upon motion of one of the parties or of the child. Miss. Code Ann. § 93-23-13(2).

█ In this case, the Mississippi court did not decline to exercise jurisdiction. Furthermore, it does not appear that Mrs. Tanner ever made a motion to the Mississippi court requesting that it decline jurisdiction in favor of a more appropriate or convenient forum, even though Mississippi law provides for such a request. Instead, the Mississippi court was continuing to exercise jurisdiction under subsection (d) of the PKPA.

██ Subsection (d) of the Act provides that the jurisdiction of the court of the state that "has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence . . . of any contestant." 28 U.S.C. § 1738A(d). Subsection (c)(1) of the PKPA requires that the court must have "jurisdiction under the laws of such State." As discussed above, the Mississippi court entered the initial custody order in compliance with its UCCJA, as the home state of the children. The Mississippi court retains jurisdiction under its UCCJA to modify its decree if the state was the children's home state at the commencement of the proceeding and "a parent or person acting as parent continues to live within this state." Miss. Code Ann. § 93-23-5(1)(a). Since Mr. Perez continues as a resident of Mississippi, the Mississippi court has jurisdiction under Mississippi law. Therefore, we conclude that the requirements of subsection (c)(1) of the PKPA, as well as subsection (d), have been met.

██ When the issue is which state has jurisdiction to *modify* a custody decree, the PKPA gives preference to the state with continuing jurisdiction. *Moore v. Richardson*, 332 Ark. 255,

964 S.W.2d 377 (1998) (citing *Murphy v. Danforth*, 323 Ark. 482, 915 S.W.2d 697 (1996)). Because the Mississippi court still had continuing jurisdiction as the decree state and had not declined to exercise it, the Arkansas court did not have jurisdiction under the PKPA to modify the Mississippi court's order. The PKPA requires that the Arkansas court give the Mississippi court's order full faith and credit. We conclude that the Arkansas court had no jurisdictional basis under which to enter the modifications, and we reverse and dismiss.

We note that much of this jurisdictional confusion might have been avoided had the Arkansas court complied with the UCCJA's directive to communicate with the Mississippi court. *See Norsworthy v. Norsworthy*, 289 Ark. 479, 713 S.W.2d 451 (1986) (citing Ark. Code Ann. § 9-13-207(d) in reaching the conclusion that it was incumbent on the Arkansas court under the UCCJA to enter into some form of direct communication with the foreign court to ascertain which forum was the better one in which to decide custody); *Mellinger v. Mellinger*, 26 Ark. App. 233, 764 S.W.2d 52 (1989). The Arkansas court clearly had knowledge as early in the case as April 16, 1996, that another proceeding was pending in Mississippi because it granted Mrs. Tanner's request for a protective order directing her not to leave Arkansas to appear at the April 17 hearing in Mississippi.

Mrs. Tanner argues that it was necessary for the Arkansas court to assume jurisdiction in this proceeding because an emergency existed in which the child's welfare was in danger. We disagree.

The UCCJA and the PKPA both contain language providing that a foreign court may exercise jurisdiction in an emergency situation. Ark. Code Ann. § 9-13-203(a)(3); 28 U.S.C. § 1738A(c)(2)(C). The requirements for exercising emergency jurisdiction are the physical presence of the child in the state and the existence of a genuine emergency, such as abandonment or neglect. *Id.*; *Murphy v. Danforth*, 323 Ark. at 491, 915 S.W.2d at 702. This jurisdictional basis is available only in extraordinary or extreme situations where the immediate health and welfare of

the child is threatened. *Caskey v. Pickett*, 274 Ark. 383, 625 S.W.2d 473 (1981).

 Courts' emergency powers are limited under both acts. *Murphy*, 323 Ark. at 491, 915 S.W.2d at 702. Emergency jurisdiction may only be used to enter a temporary order to give a party sufficient time to travel with the child to the proper forum to present her allegations of abuse and seek a permanent modification of custody. *Id*.

In the present case, when Mrs. Tanner filed with the Arkansas court, she had custody of both children under the order of the Mississippi court. The Mississippi court had restricted Mr. Perez's visitation with the children to his sister's house. Mrs. Tanner presented us with no evidence that the daughter was in any danger from Mr. Perez's brother. If Mrs. Tanner felt that her daughter was in danger because Mr. Perez was not complying with the order, she could have sought temporary relief from an Arkansas court. However, she could only seek temporary relief for the purpose of giving her adequate time to petition for permanent relief from the Mississippi court because Mississippi was the only jurisdiction at that time with authority under the PKPA to permanently modify the order.

 Because there was no evidence supporting a finding that the health or welfare of the child was in immediate danger, we conclude that Mrs. Tanner was merely shopping for a forum that would completely deny Mr. Perez's visitation rights. After trying a Mississippi court and an Alabama court, she finally found an Arkansas court that would grant her requested relief. Such forum shopping directly contravenes the express purposes of the UCCJA and PKPA.

 The Arkansas court's actions in modifying the original Mississippi decree went beyond the reach of emergency jurisdiction under either the PKPA or UCCJA. We conclude that the Arkansas court erred in exercising emergency jurisdiction under these circumstances.

For his second point, Mr. Perez claims that the Arkansas court erred in refusing to accord the Mississippi court's orders full

faith and credit. The Arkansas court refused to recognize the Mississippi orders, reasoning that the Mississippi orders should not be accorded full faith and credit because they awarded custody, visitation, and support absent a judicial determination of paternity, which the court found to contravene Arkansas law.

The Arkansas court was obligated to determine whether the foreign court had jurisdiction, as well as testing the validity and effect of the foreign court's order, under the law of the foreign state, not Arkansas law. *See Hinchee v. Golden Oak Bank*, 540 So.2d 262 (Fla. Dist. Ct. App. 1989). In *enforcing* the Mississippi court's judgment, a finding that the Mississippi court erred in interpreting its own law or statutes or failed to apply the proper state law would still not be grounds for refusing to recognize the judgment. *Fauntleroy v. Lum*, 210 U.S. 230, 237 (1908); *see also* 1 RESTATEMENT OF CONFL. OF LAWS 2D § 106 (1969); *Corliss v. Corliss*, 89 N.M. 235, 549 P.2d 1070 (1976) (looking to Missouri law to determine whether to modify alimony and child support awarded in Missouri divorce decree). Of course, if the order was entered by a court that was wholly without jurisdiction or if the order was procured by fraud, the Arkansas court need not recognize the judgment because the order would be void in the rendering state itself and not entitled to full faith and credit. *Id.; see also Kricfalusi v. Brokers Securities, Inc.*, 305 Ark. 228, 806 S.W.2d 622 (1991).

The United States Congress clearly intended for the PKPA to extend full faith and credit to custody and visitation decrees entered in conformity with the UCCJA. In *Thompson v. Thompson*, 484 U.S. 174 (1988), the Supreme Court determined that Congress enacted the PKPA to make the requirements of full faith and credit apply to child-custody proceedings. *See also* Roger M. Baron, *Federal Preemption in the Resolution of Child Custody Jurisdiction Disputes*, 45 ARK. L. REV. 885 (1993). Additionally, Congress physically positioned the PKPA as an addendum to the Full Faith and Credit Clause, 28 U.S.C. § 1738, which demonstrates that Congress intended for the Act to have the same operative effect as the Full Faith and Credit Clause. *Thompson*, 484 U.S. at 183.

 The United States Constitution directs that "Full Faith and Credit shall be given in each State to the [judicial proceedings] . . . of every other State." U.S. CONST. art. IV, § 1; *see also* 28 U.S.C. § 1738 (1994). Under the PKPA, our courts will accord full faith and credit to the custody determinations of a sister state that had jurisdiction over the parties and the subject matter. 28 U.S.C. § 1738A. Since we determined above that the Arkansas court lacked jurisdiction and was therefore required to give full faith and credit to the Mississippi orders under the PKPA, we likewise conclude that the Arkansas court erred in refusing to recognize the Mississippi orders under the Full Faith and Credit Clause of the United States Constitution.

For his fourth assignment of error, Mr. Perez asserts that the Arkansas court erred in assuming jurisdiction because Mississippi was the most convenient forum to determine the child-custody dispute.

The UCCJA and PKPA do not require a court that properly has jurisdiction to decline jurisdiction in favor of the most convenient forum. As touched on above, our UCCJA, as well as Mississippi's UCCJA, contains a provision allowing a court to decline to exercise jurisdiction where the court determines that another forum is more appropriate for any of several reasons. *See* Ark. Code Ann. § 9-13-207; Miss. Code Ann. § 93-23-13; *see also Blocker v. Blocker*, 57 Ark. App. 218, 944 S.W.2d 552 (1997). However, the Arkansas court was not in the position to consider whether the Mississippi court was a more appropriate forum because the PKPA preempted any claim to jurisdiction that the Arkansas court might have possessed in favor of the continuing jurisdiction of the Mississippi court. Because we have determined that the Arkansas court was without jurisdiction, we need not reach this issue.

Reversed and dismissed.