Keith HUDSON *v.* The Hon. Philip PURIFOY, Judge,
Chancery Court of Miller County, Arkansas

99-32                                              986 S.W.2d 870

Supreme Court of Arkansas
Opinion delivered March 25, 1999

*Dunn, Nutter, Morgan & Shaw,* by: *W. David Carter* and *Adam O. Fellows,* for petitioner.

*Keil & Goodson,* by: *John C. Goodson,* for respondent.

ANNABELLE CLINTON IMBER, Justice. The petitioner, Keith Hudson, asks this court to issue a writ of prohibition to the respondent, Judge Philip Purifoy, directing him to refrain from exercising jurisdiction in the proceeding now pending before him in the Miller County Chancery Court. We deny the petition.

On May 4, 1987, the Miller County Chancery Court of Arkansas (hereinafter "the Arkansas court") entered a divorce decree terminating the marriage of Keith Hudson and Judy Hudson Adcock[1]. The chancellor awarded Ms. Adcock custody of Alana Marie Hudson, the sole child born of the marriage. Soon after the divorce, Mr. Hudson moved to Oklahoma. The parties, however, dispute where Ms. Adcock has lived since the divorce was granted. Mr. Hudson claims that Ms. Adcock moved to Colorado in the early 1990's, and that she did not return to Miller County, Arkansas until after he requested custody of their child in April of 1998. In contrast, Ms. Adcock contends that although she has maintained a second home and a business in Colorado since 1991, she has continued to reside in Miller County, Arkansas since the divorce was entered in 1987.

---

[1] Although many of the pleadings in this case refer to Ms. Adcock as "Judy Hudson," the record reflects that her current name is "Judy Adcock."

Although the 1987 Arkansas custody order was never legally modified, the parents agreed to allow Alana to live with her father in Oklahoma for the 1996-97 and 1997-98 school years. During this time, Alana spent part of her school vacations with her mother in Colorado. In March 1998, Mr. Hudson allowed Alana to visit Ms. Adcock and her relatives in Miller County, Arkansas for one week. Alana did not return to Mr. Hudson's home in Oklahoma after the one-week visit, and she has continued to live in Miller County, Arkansas since March of 1998. There is a factual dispute as to whether Mr. Hudson abandoned Alana in Arkansas, or whether Ms. Adcock refused to allow the child to return to Oklahoma.

On April 8, 1998, Mr. Hudson filed in Oklahoma a petition to assume jurisdiction and a motion to modify the Arkansas divorce decree. In this pleading, Mr. Hudson asked the court to grant him custody of Alana because she had resided with him for at least six months prior to filing the petition. On the same day, the Oklahoma court entered a temporary *ex parte* order giving Mr. Hudson temporary custody until a hearing could be held on the merits.

On May 15, 1998, Ms. Adcock filed in the Arkansas court a motion for contempt for past due child support, a motion to increase child support, and a motion for a protective order. This was the first motion to be filed by either party in the Arkansas court since the divorce decree was entered in 1987. In her request for a protective order, Ms. Hudson advised the Arkansas court that Mr. Hudson had already begun legal proceedings in Oklahoma to remove Alana from Arkansas. The Arkansas court, however, did not contact the Oklahoma court to discuss the child-custody matters that were simultaneously pending in their respective courts as is required by Ark. Code Ann. § 9-13-206(c). Instead, on May 15, the Arkansas court issued a protective order prohibiting the removal of Alana from the court's jurisdiction.

Meanwhile, the Oklahoma court held a hearing on Mr. Hudson's request for custody on May 18, 1998. Mr. Hudson was present, but Ms. Adcock was not. The record contains a return of summons declaring that on April 16, 1998, a Colorado deputy

sheriff served Ms. Adcock with notice of the Oklahoma proceedings. Ms. Adcock, however, contends that she did not receive notice of the Oklahoma proceedings until the day of the hearing. Because Ms. Adcock did not appear, the Oklahoma court granted Mr. Hudson's request for custody on May 18, 1998. After securing the Oklahoma order, Mr. Hudson traveled to Arkansas and attempted to take Alana back to Oklahoma. His efforts were unsuccessful.

Accordingly, on July 29, 1998, Mr. Hudson filed in the Arkansas court an application for a writ of habeas corpus and a motion to vacate the protective order. In this pleading, Mr. Hudson alleged that he was entitled to possession of Alana pursuant to the custody order entered by the Oklahoma court on May 18, 1998. Mr. Hudson also asked the Arkansas court to vacate its protective order entered on May 15, 1998, because Alana had resided with him in Oklahoma for at least six months before the filing of the action in Arkansas, which meant that Oklahoma had become the "home state" under Arkansas's Uniform Child Custody Jurisdiction Act, Ark. Code Ann. §§ 9-13-201 to 228 (Repl. 1998). At the conclusion of the hearing on Mr. Hudson's motions, the court made the following findings from the bench:

> We [sic] find that there is not sufficient evidence before the Court that custody was satisfactorily in place with the petitioner, Mr. Hudson, to satisfy the requirements of any Uniform Act between the states. Therefore, the application for Writ of Habeas Corpus must fail. The original custodian, Ms. Hudson, has not relinquished her custody to such an extent that . . . Oklahoma should, in fact, have jurisdiction over the custody of your child. And, therefore, the original order should prevail.

On October 30, 1998, the court entered orders denying Mr. Hudson's application for a writ of habeas corpus and his motion to vacate the protective order. In denying the motion to vacate the protective order, the court found that it had "jurisdiction to hear child custody matters in dispute, and that there should be no abatement of proceedings in this Court."

Currently, Mr. Hudson has filed before this court a petition for a writ of prohibition to prevent the respondent, Judge Philip Purifoy, from proceeding further in the child support and custody

case filed by Ms. Adcock. Mr. Hudson contends that we should issue the writ because the respondent has exceeded his jurisdiction under Ark. Code Ann. § 9-13-206 (Repl. 1998), and he has no other remedy available. We deny the petition.

## I. Issuance of a Writ of Prohibition

We have often stated that we will issue a writ of prohibition only when the trial court completely lacks or exceeds its jurisdiction, and there is no other adequate remedy by appeal or otherwise. *Henderson Specialists, Inc. v. Boone County Circuit Court,* 334 Ark. 111, 971 S.W.2d 234 (1998); *Young v. Smith,* 331 Ark. 525, 964 S.W.2d 784 (1998). We have also said that a writ of prohibition is inappropriate when the trial court has not resolved a factual dispute necessary to the determination of jurisdiction. *Ellison v. Langston,* 290 Ark. 238, 718 S.W.2d 446 (1986); *Porter Foods, Inc. v. Brown,* 281 Ark. 148, 661 S.W.2d 388 (1983). For example, in *Steve Standridge Ins. Inc. v. Langston,* 321 Ark. 331, 900 S.W.2d 955 (1995), we refused to issue a writ of prohibition where there was a factual dispute concerning the decedent's residency; a fact necessary for the jurisdiction determination. Likewise, in *Wisconsin Brick & Block Corp. v. Cole,* 274 Ark. 121, 622 S.W.2d 192 (1981), we said:

> Whether the "minimum contacts" test has been satisfied is a question of fact. In cases where jurisdiction depends upon the establishment of facts, the issue of jurisdiction must be decided by the trial court, and even if that decision should be wrong, we correct that error on appeal and not on prohibition.

## II. UCCJA and the PKPA

The parties in this case do not challenge the Arkansas court's jurisdiction to enter the original divorce decree awarding Ms. Adcock custody. Hence, the sole issue is whether Arkansas or Oklahoma has jurisdiction to modify the original divorce decree entered by the Arkansas court. This is not the first time that we have dealt with conflicting jurisdiction in child-custody cases. As we have previously explained, the Uniform Child Custody Jurisdiction Act ("UCCJA"), Ark. Code Ann. §§ 9-13-201 to 228

(Repl. 1998), and the Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C.S § 1738A (1989), govern state conflicts over child-custody jurisdiction. *Moore v. Richardson*, 332 Ark. 255, 964 S.W.2d 377 (1998). Where the UCCJA and the PKPA conflict, the PKPA controls. *Moore, supra; Garrett v. Garrett*, 292 Ark. 584, 732 S.W.2d 127 (1987).

The PKPA provides that:

> A court of a State may modify a determination of the custody of the same child made by a court of another State, if —
>
> (1) it has jurisdiction to make such a child custody determination; and
>
> (2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

28 U.S.C.S. § 1738A(f). Hence, Oklahoma can modify the Arkansas divorce decree, and the child-custody order contained therein, only if Oklahoma has jurisdiction to make the child-custody determination, and Arkansas no longer has jurisdiction or has declined to exercise jurisdiction. *See Perez v. Tanner*, 332 Ark. 356, 965 S.W.2d 90 (1998); *Moore, supra*. It is clear that Oklahoma is Alana's "home state" under the PKPA and the UCCJA. 28 U.S.C.S. § 1738A(b)(4) and (c); Ark. Code Ann. §§ 9-13-202(5) and 9-13-203(a)(1). However, from the language of subsection 1738A(f), it is also clear that the PKPA "gives preference to the state with continuing jurisdiction." *Perez, supra*.

Obviously, the Arkansas court has not declined to exercise jurisdiction in this case. Thus, we must decide if the Arkansas court, which made the original child-custody determination in 1987, has continuing jurisdiction. On this subject, the PKPA provides that:

> The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the *residence* of the child or of *any contestant*.

28 U.S.C.S. § 1738A(d) (emphasis added). The PKPA does not define the term "residence." Other jurisdictions, however, have held that the word "residence" as used in section 1738A(d) should be defined by the law of the state that entered the original custody order. *See McDougald v. Jenson*, 786 F.2d 1465 (11th Cir. 1986); *In re Marriage of Pedowitz*, 225 Cal. Rptr. 186 (Cal. Ct. App. 1986); *Hines v. Shape*, No. 314-1993, 1994 WL 636493 (Del. March 8, 1994); *In re Marriage of Anderson*, 969 P.2d 913 (Kan. Ct. App. 1998); *Fortier v. Rogers*, 693 N.E.2d 1058 (Mass. App. Ct. 1998). For example, in *Fortier*, the Massachusetts court applied Florida law to determine whether Florida remained the "residence of the child or of any contestant" as stated in section 1738A(d) of the PKPA. *Fortier, supra*. Because the Arkansas court entered the original custody order in this case, the trial court should apply Arkansas law when determining whether Arkansas is the still the "residence" of Ms. Adcock.

■ In the case before us today, there is an unresolved factual dispute as to whether Ms. Adcock, a "contestant" in this matter, has remained a "resident" of Arkansas since 1987. As previously explained, a writ of prohibition is inappropriate when the trial court has not resolved a factual dispute that is necessary to the determination of jurisdiction. *See Steven Standridge Ins. Inc., supra; Ellison, supra; Porter Foods, Inc., supra; Wisconsin Brick & Block Corp., supra*. Accordingly, we deny Mr. Hudson's petition for a writ of prohibition so that the trial court may resolve the factual dispute of whether Ms. Adcock has resided in Arkansas since 1987. If either party is unsatisfied with the court's resolution, he or she may challenge the finding on direct appeal. *See Wisconsin Brick & Block Corp., supra*.

Petition denied.

GLAZE, CORBIN, and THORNTON, JJ., concur.

T OM GLAZE, Justice, concurring. The Parental Kidnaping Prevention Act (PKPA) controls the outcome of this custody case, but the PKPA was not argued or considered at the hearing before the chancellor. The issue is whether the Arkansas court, which initially awarded custody in this matter, has continuing jurisdiction or whether the Oklahoma court acquired jurisdic-

tion to modify Arkansas's earlier award because all parties have since moved their residences from Arkansas and Oklahoma subsequently became the home state of the parties' child.

The majority opinion points out that the trial court did not resolve whether, under the terms of the PKPA, the child's mother, Judy Adcock, had moved her legal residence from Arkansas, and for that reason the father's, Keith Hudson's, petition for writ of prohibition should be denied. While I harbor serious doubt that Adcock retained her legal residence in Arkansas to permit the Arkansas court to retain continuing jurisdiction of this custody case, I must agree that the parties and the trial court failed to develop this issue fully. Arkansas law is well settled that a writ of prohibition is inappropriate when a trial court has not resolved a factual dispute necessary to determine jurisdiction, thus, I join in the majority court's decision to deny Hudson's petition. I only add that the PKPA law establishes a home-state bias which is designed to provide certainty in a custody situation like the one now before us. The mere fact that an Arkansas court initially awarded custody in this case does not mean Arkansas's jurisdiction is automatically maintained or preferred. In fact, if both parties and their child left the state to reside elsewhere, Arkansas lost jurisdiction and the child's home-state jurisdiction, as defined in the PKPA, controls which state has jurisdiction to modify (if at all) the initial Arkansas court's decree. The child's home state in these circumstances appears to be Oklahoma, but because the record is not clear on this point; therefore, I agree that a writ of prohibition does not lie.

CORBIN and THORNTON, JJ., join this concurring opinion.