RUBY JEAN LARKIN v. JACOB C. PRIDGETT ET UX

5-3964                                    407 S. W. 2d 374

Opinion delivered October 17, 1966
[Rehearing denied November 21, 1966.]

*Reinberger, Eilbott, Smith & Staten,* for appellant.

*George Howard Jr.,* for appellee.

Ed. F. McFADDIN, Justice. The custody of a little boy—Wayne Edward Larkin—born March 13, 1961, is the object of this litigation. The appellant, Ruby Jean Larkin, is the mother of the child. He has no legal father; but appellees, Jacob C. Pridgett and wife, are the parents of the putative father. The appellant, Ruby Jean Larkin, filed this habeas corpus suit against the appellees on November 15, 1965, to obtain possession of the child. The record exceeds 300 pages and the trial was extended to several weeks because of court recesses. Finally, the Chancery Court denied the habeas corpus sought by the petitioner-appellant, and entered a decree awarding the legal custody of the child to the defendants, subject to reasonable visitation rights to the plaintiff and other interested relatives. From that decree there is this appeal in which the appellant urges one point with five sub-points, same being:

"The Court erred in awarding custody of the appellant's minor child to the appellees.

"(1) Any Finding That The Appellant Was Incompetent Or Unfit To Provide For Her Child Would Have Been Against The Preponderance Of The Evidence.

"(2) The Finding By The Chancellor That The Appellant Abandoned Her Child Was Against The Preponderance Of The Evidence.

"(3) The Finding By The Chancellor That The Appellees Have Had The Physical Custody Of The Child Most Of The Time Since October Of 1962 Was Against The Preponderance Of The Evidence.

"(4)   The Finding By The Chancellor That The Appellant Orally Agreed That The Appellees Could Adopt The Child Was Against The Preponderance Of The Evidence.

"(5)   The Chancellor Erred In Not Applying The Applicable Law To The Facts Of The Instant Case."

If a habeas corpus case were the same as a replevin case, then this decree would have to be reversed because the appellant established—in fact it was admitted—that she was and is the mother of the little boy and appellees are merely the parents of the putative father; and there is no applicable period of limitation fixed by statute in such a case. But a habeas corpus suit like this, involving the custody of a child, is not like a replevin case. No: the best interest of the child is a matter of vital importance in a habeas corpus case like this one. *Tucker* v. *Tucker,* 207 Ark. 359, 180 S. W. 2d 571.

There were many witnesses in this case and it is impossible to reconcile the testimony. In such a situation we must necessarily lean heavily on the ability of the Chancellor, who saw the witnesses and evaluated their testimony, to decide which witnesses to believe in determining the best interest of the child. We therefore copy *in extenso* from the Chancellor's Opinion:

"The sole issue in this case involves the custody of Wayne Edward Larkin, a little boy 'four years old. Wayne is the illegitimate child of the petitioner, Ruby Jean Larkin. The undisputed proof is that a son of the defendants is the putative father of this child. . . .

"So the issue of who will have custody  of the little boy is between his mother and the parents of the man who fathered this child. Even though they are not legally the paternal grandparents, the evidence reflects that their love and affection for the little boy has been manifested to just as great a degree as if they were, in law, the paternal grandparents.

"With some rare exceptions, the evidence is in serious and irreconcilable conflict. The Court can only resolve the issues by first resolving the conflicting testimony. The petitioner admits to giving birth to two illegitimate children and the evidence sustains a finding that she gave birth to a third illegitimate child.

"In September of 1962, petitioner left Wayne Edward in the custody of her mother and went to New York to work. Even though it was denied, the Court is satisfied that petitioner's mother relinquished custody of Wayne Edward to the defendants in October, 1962 and that the defendants have had the physical custody of the child most of the time since then with the child visiting in the home of his maternal grandmother periodically. The defendants appear to have been the main support for the child for the past three years.

"The problem of the conflict between the natural parent and third parties for the custody of minor children has plagued our courts for many years, but from our cases, several rather clear-cut rules or principles of law have been established. In the early case of *Verser* v. *Ford,* 37 Ark. 27, the natural father of a little girl sought the custody. The child's maternal grandparents had cared for and kept the child since the child was just a few days old. The Court in the Verser case stated some principles that are to be used as guides by the courts in custody cases. The Court stated: 'Only a few general principles can be taken as guides, subject to which the Chancellor must exercise his judgment upon the peculiar circumstances of the case, *and act as humanity, respect for the parental affection, and regard for the infant's best interests may prompt. All three should be considered; neither ought to be conclusive.'* (emphasis supplied) Notwithstanding the Court's finding that the petitioner, the natural father, was a moral man with the means of discharging his parental obligations, the Supreme Court affirmed the Chancery Court order that awarded the custody of the little girl to the grandparents. The Court said: 'The father has shown himself to

be a moral man, with the means of discharging his parental obligations. Certainly, under the circumstances, if he had been in possession of the child, no Chancellor could have found warrant in equity for taking her away to be placed under the grandmother's care. But it cannot be ignored that the case does not present that attitude. " 'The child was placed where she is by the father's assent, and has so remained. By his assent ties have been woven between the grandmother and granddaughter, which he is under strong obligation to respect, and which he ought not wantonly and suddenly to tear asunder. He has shown no urgent necessity for present action, and his appeal to the Circuit Court for aid was not such as to enlist in most hearts any very strong sympathy.'

"The case of *Coulter* v. *Sypert,* 78 Ark. 193, involved the custody of a ten year old boy wherein the boy's father was seeking the custody of the child from the grandfather. The Court, in awarding custody to the grandfather, stated: 'The father has no proprietary right or interest in or to the custody of his infant child. As said by Senator Paige in *Mercein* v. *People,* 25 Wend., 64, 103, decided in the Court of Errors of New York in 1840: "There is no parental authority independent of the supreme power of the State, but the former is derived altogether from the latter. * * * The moment a child is born, it owes allegiance to the government of the country of its birth, and is entitled to protection of that government. And such government is obligated, by its duty of protection, to consult the welfare, comfort and interests of such child in regulating its custody during the period of its minority." '

"The case of *Baker* v. *Durham,* 95 Ark. 355, has been cited as authority that a natural parent will not be deprived of the custody of his or her child unless said parent is incompetent or unfit. However, even the Baker case recognized that other factors could be present that would warrant and require a Court to deprive a natural parent of custody even though the parent was compe-

tent, fit, and a moral person. The Court stated: 'There may be other exceptional cases where the father, by reason of indifference to the welfare of his child and the lack of proper affection for it, has voluntarily relinquished these parental obligations, privileges and pleasures to other hands for so long that the court will refuse to disturb the associations and environments which his own conduct has produced, and will leave in *statu quo* those whom he has thus permitted to stand in *loco parentis.*'

"It should be noted in the case before the Court, that even though the petitioner did not relinquish the custody of Wayne Edward to the defendants in the first instance, the preponderance of the evidence reflects that she was aware of the fact that her mother had relinquished custody of the child to the defendants. The Court is of the further opinion that petitioner orally agreed at one time that the defendants could adopt the child involved.

"The case of *Mantooth* v. *Hopkins,* 106 Ark. 197, at page 205 stated the rule: 'While the preferential right of parents as the natural guardians of their children entitling them to their custody, will always be respected and enforced as between them and relatives or strangers to the blood, unless there are some special circumstances calling for a different disposition of them, still whenever these circumstances arise the Court will give force to them and will not treat the right of the parent as proprietary and as absolute and uncontrollable.'

"The case of *Tucker* v. *Tucker,* 207 Ark. 359, 180 S. W. 2d 571, stated the rule: 'Many decisions (rendered both before and after *Loewe* v. *Shook*) are to be found where the court declined to restore the custody of an infant to a parent who was morally fit, and financially able to establish and maintain a suitable home for the child. When the language employed in *Loewe* v. *Shook* is read in the light of these cases it is apparent that the court did not by that decision change the rule announced

in the earlier cases. Moral fitness and financial ability remained, as before, proper, but not the only, nor even paramount, subjects of inquiry. All doubt, if any existed, must necessarily have been removed when in *Massey* v. *Flinn,* 198 Ark. 279, 128 S. W. 2d 1008, a contest between a father and an aunt, it was declared "We do not think that the fitness or competency of the father is the only criterion by which to judge his right to the custody and control of his child."

" 'In the case last cited it was said: "We recognize the general rule that ordinarily the parent of the child is its natural guardian and is entitled to its care and custody, however, this is not always true. There are exceptions. *Of prime concern and the controlling factor is the best interest of the child.*" ' (Emphasis added).

"Other cases that have set forth the rules of law as enumerated in the above cited cases are: *Massey* v. *Flinn,* 198 Ark. 279, 128 S. W. 2d 1008; *Haller* v. *Haller,* 234 Ark. 984, 356 S. W. 2d 9; *Carr* v. *Hall,* 235 Ark. 874, 363 S. W. 2d 223. In the Haller case . . . the opinion for the Court stated: 'It is a well-established rule that the welfare of the child is the polestar.'

"It can be readily seen from the above quoted citations that a natural parent does not have an absolute right to the custody of his or her child. In a general sense, a natural parent is preferred over blood relatives or strangers, but this is not because of any absolute right that the natural parent may have but it is presumed to be for the benefit of the infant. The law presumes that it is better for a minor to be under the care of its natural protector. However, this is not a conclusive presumption. Therefore, when this Court is asked in this case to enter an order putting the custody of the minor child with the natural mother and to withdraw his custody from the parents of the putative father, it has a duty to look into all the circumstances and ascertain whether it will be for the real and permanent interests of the child.

"When this criterion is followed in this case, there can be but one result. Assuming without deciding that the natural mother is a fit and moral individual—and the admitted fact that she has had two illegitimate children would make this statement highly questionable—nevertheless, she left this child in the custody of the maternal grandmother in September, 1962, and went to New York where she has remained continuously since that time with one visit back home between that time and just shortly before the first trial of this case.

"Even though she testified that she has made regular payments for the support of this infant, other than that statement and the statement of her mother, there is nothing in the record to substantiate such a claim. As previously found by the Court, the defendants have had the custody for most of the time since October, 1962.

"The evidence reflects that the defendants are high type people of the Negro race who are providing a good home for this child. The evidence reflects that their own children have obtained a good education for persons with their economic standing. The petitioner is asking this Court to allow her to take this child from a stable and good environment to her room or apartment in New York City, with all of the hidden perils that may lurk in that metropolis, portions of which have sometimes been referred to as a jungle. The petitioner attempted to leave the impression that she did not live in a ghetto, but by her own testimony she went to New York to seek work and apparently was never able to be in a financial position, nor had the desire, to take the child to live with her in New York. . . .

"The Court holds that the legal custody of Wayne Edward Larkin should be awarded to the defendants subject to reasonable visitation rights of the petitioner and other interested relatives. . . ."

The appellant has failed to establish that the opinion of the Chancellor was in error in any respect.

Affirmed.