Mike A. MURPHY and Karen Murphy *v.* Robin DANFORTH

95-1136                                                                 915 S.W.2d 697

Supreme Court of Arkansas
Opinion delivered February 19, 1996
[Petition for Rehearing denied March 25, 1996.]

*Law Office of Billy J. Hubbell,* by: *Billy J. Hubbell,* for appellants.

*Herman Hamilton,* for appellee.

ROBERT H. DUDLEY, Justice. The Probate Court of Ashley County refused to exercise jurisdiction in this multi-state child-custody case. We affirm the decision of the trial court.

Karl and Robin Roseberry lived in Fort Worth, Tarrant County, Texas. They had two little girls, Amanda, born May 5, 1987, and Amber, born on July 29, 1989. In 1992, Karl filed suit for divorce in the Tarrant County District Court. Robin appeared personally and contested the case. Testimony was taken on April 15, 16, and 20, 1992, but by the time the twenty-six page decree was entered on June 19, 1992, Robin resided in Vermont.

The Tarrant County District Court found that it had jurisdiction of the case, in part, because Karl had been a domiciliary of Tarrant County for more than six months. The decree pro-

vided that Karl was appointed the sole managing conservator, or was granted custody, of the two little girls, and that Robin was appointed the possessory conservator, or was given visitation rights. The decree specified the times for visitation and provided that Karl was required to provide round-trip airline fares for the children from the Dallas-Fort Worth Airport to the Burlington, Vermont, airport for both the summer and Christmas visitation periods with Robin. The district court retained jurisdiction to make further orders. The presiding judge was William Brigham.

In March 1993, Karl filed a motion for custody modification in the Tarrant County District Court. He alleged that Robin was guilty of sexual abuse of the children and asked that unsupervised visitation be denied Robin and that she be enjoined from taking the children outside of Tarrant County. The trial court is not shown to have acted on this motion, and the record does not disclose the reason Karl did not pursue it.

On July, 27, 1994, Robin filed a motion in Tarrant County and, in part, pleaded: "This Court has acquired and retains continuing, exclusive jurisdiction of this suit and of the children the subject of this suit as a result of prior proceedings." The motion alleged that the two children were in immediate physical danger from Karl. Attached to the motion was the affidavit of Shalene Portman Roseberry, who was Karl's new wife. The affidavit stated that Karl had severely beaten Shalene on various occasions, had threatened the girls, had physically abused them, had stated that he was going to Vermont to kill Robin, and had extreme outbursts of anger accompanied with violent physical actions.

On July 29, 1994, the Tarrant County District Court, in an *ex parte* temporary order, removed the care and custody of the children from Karl and placed the girls in the custody of Robin. The order additionally restrained Karl from seeing the children. The district court set a hearing for August 11, 1994, to determine whether the temporary restraining order should be made into a temporary injunction pending final hearing and whether Robin should be made the sole conservator. The presiding judge again was Judge William Brigham.

The temporary order granting care and custody to Robin had not been amended or modified when, on September 29,

1994, Karl was killed in a railroad crossing accident. On that date, the children were in Tarrant County at the home of Karl's parents. The record does not disclose how or why the children were there.

Soon after Karl's death, Karen and Mike Murphy, Karl's sister and brother-in-law, took the children from Karl's parents' home in Tarrant County to their home in Ashley County, Arkansas. Almost immediately, on October 3, 1994, Karen and Mike Murphy filed a petition in the Probate Court of Ashley County for an *ex parte* order of temporary guardianship of the two girls. They alleged:

> Robin Danforth Roseberry has kidnapped the children in the past, has refused to return the children to their father after a visit; has a history of shoplifting and other bizarre behavior; and has lost custody of an older child to her parents because of her neglect. Finally, and most serious of all, Robin Danforth Roseberry has allowed these minor children to be sexually molested by her boyfriend and has participated with her boyfriend in requiring the children to watch sex acts involving the mother and the boyfriend. It is in the best [interest] of the minor children that petitioners be appointed temporary and permanent guardians of the person and of the estate of the minor children.

They asked that the temporary guardianship be made permanent. On the same day, October 3, the Arkansas court appointed Karen and Mike Murphy temporary guardians until the matter could be fully heard on October 6, 1994. Robin had no notice of the proceeding.

On the same day, October 3, but in Tarrant County, Texas, Robin filed a petition for a Writ of Habeas Corpus in which she alleged that the girls were being illegally restrained by Karl's parents. Judge William Brigham issued the writ commanding Karl's parents to produce the children before the court on October 6, 1994.

On October 6, the Murphys, who are appellants in this case, and Karl's parents, Curtis and Delango Roseberry, filed petitions in intervention in the custody action in the Texas court.

All four of the intervenors sought custody of the girls for the Murphys.

On the same date, October 6, as the hearing was about to commence in Ashley County, Arkansas, Probate Judge Jerry Mazzanti stated that he had been contacted by Judge William Brigham of the Tarrant County District Court and informed that there had "been an ongoing proceeding there in Texas for a substantial period of time," and that it was his impression that the Texas court should hear the custody matter. Judge Mazzanti stated that Judge Brigham had not yet had time to forward certified copies of the Tarrant County, Texas, proceedings, but because of the serious nature of the allegations filed in the Arkansas court, he ruled that he would take jurisdiction for consideration of an "emergency order for a period of up to thirty days or until there is a verified order" from Texas, and then the temporary order would then be terminated. Judge Mazzanti heard proof but never entered a formal order. Perhaps the reason was the judge knew Robin had not been given notice of the Arkansas hearing, and that she was proceeding in Texas.

The next day, October 7, in Texas, Judge Brigham issued an "Order on Jurisdiction and Delivery of Minor Children to the Court." It provides, in part, "IT IS THEREFORE ORDERED that the 233rd District Court of Tarrant County, Texas has *continuing jurisdiction* and the state of Texas is the *home state* of the children the subject of this suit." (Emphasis added.) On October 12, Judge Brigham issued an "Order to Return Children," which in part provides, "The Court finds that the Applicant, ROBIN LYNN DANFORTH, is the person entitled by law to possession of the children, AMANDA LEE ROSEBERRY and AMBER DAWN ROSEBERRY and that Respondents, MICHAEL ANDERSON MURPHY, KAREN LEANN MURPHY, CURTIS ROSEBERRY, and DELANGO (JANIE) ROSEBERRY, have illegally confined and restrained the children." As a result of the illegal restraint of the children, and the interventions of the Murphys and Karl's parents, the Tarrant County District Court awarded Robin a judgment against the Murphys and Karl's parents for $1,340.00, plus $238.00 costs. On November 9, 1994, in the final custody order, Judge Brigham decreed, "IT IS ORDERED AND DECREED that ROBIN LYNN DANFORTH is the person

entitled by law to possession of the children, AMANDA LEE ROSEBERRY and AMBER DAWN ROSEBERRY."

On December 12, 1994, the Tarrant County District Court set the petitions for intervention for hearing on January 23, 1995. On January 23, 1995, an associate judge of the Tarrant County District Court filled out a "Report for Modification" which provides that the petitions for intervention filed by the Murphys and Karl's parents were moot and "Court further finds that all information involving the children is now in Vermont and this is not a convenient forum. Ordered that intervention is dismissed." The associate judge's report was approved by Judge Brigham on January 24.

On March 1, 1995, the Murphys filed a motion asking the Arkansas court to reconsider its earlier order refusing to exercise jurisdiction since the Texas court said the case was no longer pending there. A hearing was set for April 17, 1995. Robin filed a motion to dismiss. Both parties were represented at the hearing on the motion to reconsider. Counsel agreed that the children had been in Vermont since October 1994, and that the Vermont Family Court had scheduled a hearing for May 11, 1995, on a petition for custody that had been filed by the Murphys. Judge Mazzanti ruled that on October 3, 1994, the date the Murphys filed their petition for a temporary guardianship in Arkansas, Texas was the home state of the girls pursuant to the Parental Kidnapping Prevention Act of 1980 and, as a result, dismissed the motion to reconsider.

Even though this case involves a petition for guardianship, rather than the more usual chancery court determination of child custody, the Parental Kidnapping Prevention Act, 28 U.S.C. 1738A, (1994), is applicable because the Murphys sought to be appointed temporary guardians, with the temporary appointment to be made permanent; thus, it would have the effect of permanently determining custody and would interfere with the Texas court's custody orders. *See* 28 U.S.C. 1738A(b)(3). On appeal, the Murphys first contend that under the P.K.P.A. the Texas court improperly exercised jurisdiction because (1) Karl was deceased and, under Texas law, the pending case between him and Robin was abated; and (2) Texas did not meet the criteria of the P.K.P.A. as set out in 28 U.S.C.

§ 1738A(c)(2) because no contestant continued to live in Texas after Karl's death.

The Murphys' argument that the Texas court did not have jurisdiction ignores a number of critical facts. On July 29, 1994, Robin again entered her personal appearance in the Tarrant County District Court and pleaded that court "has acquired and retains continuing, exclusive jurisdiction of this suit and of the children." On the same date, the Tarrant County Court gave temporary custody of the children to Robin, and set a hearing for August 11 to determine whether Robin should be given permanent custody. The order had not been amended when, on September 19, Karl was killed. The children were in Tarrant County on that day. By October 3, the children had been temporarily taken to Ashley County, where they remained for only a few days. On October 3, the Murphys filed their petition for a temporary guardianship in Ashley County, but on the same day Robin filed a petition in Tarrant County asking that the children be returned to her. On October 6, Judge Brigham issued a Writ of Habeas Corpus. This same day, October 6, is the date Judge Mazzanti refused to exercise jurisdiction in Ashley County. The next day, October 7, Judge Brigham ruled that the Tarrant County District Court "has *continuing jurisdiction* and the state of Texas is the *home state* of the children." (Emphasis added.) On October 11, 1994, the Murphys filed a petition in intervention in Tarrant County. On the same day, October 11, 1994, Robin, the Murphys and Karl's parents appeared in the Tarrant County District Court and the court granted Robin a personal judgement against the Murphys and Karl's parents in the amount of $1340.00, plus costs in the amount of $238.00 for expenses she incurred in attempting to find her children. Robin's attorney was awarded a judgment against the Murphy's and Karl's parents for $1,912.50. On November 9, 1994, Judge Brigham found that the children were in possession of the Family Court Services in Tarrant County Texas and ruled that Robin was entitled to permanent custody of the children. It was not until over a month later, on December 12, 1994, after Robin and the children were in Vermont, that the Texas court ruled that "all information involving the children is now in Vermont and this is not a convenient forum."

█ The P.K.P.A. hierarchy of jurisdictional preferences is:

(1) continuing jurisdiction; (2) home-state jurisdiction; (3) significant-connection jurisdiction; and (4) jurisdiction when no other jurisdictional basis is available. 28 U.S.C. § 1738A(c); Jeff Atkinson, *Modern Child Custody Practice*, § 3.24 at 165 (1986).

Tarrant County fits within the first category. It had continuing jurisdiction. The original custody decision was made there, as were the first and the second modifications of custody, and the Texas court retained jurisdiction to make further orders affecting the children. All of the parties to this action were there before the Texas court when the final custody order was entered, and the Texas court ruled that it had continuing jurisdiction.

■ In addition, the Tarrant County District Court ruled that Texas was the home state of the children. *See* 28 U.S.C. § 1738(b)(4). The record does not reflect that these rulings were ever appealed.

■ Even if continuing jurisdiction and home state jurisdiction were not in Texas, it was also the state which met the third criterion, a significant connection. Robin entered her personal appearance in Tarrant County when she petitioned for a change of custody, that petition was still pending on the date of Karl's death, and the children were still in that jurisdiction on the date of Karl's death. The Murphys and Karl's parents filed a petition in intervention there. They appeared there. When home-state jurisdiction is not available, a jurisdiction with a significant connection can exercise jurisdiction. 28 U.S.C. 1738A(c)(2)(B). Manifestly, the connection was significant enough for the Texas court to award Robin a personal judgment against the Murphys and Karl's parents for $1340.00, plus $238.00 costs.

■ Finally, the P.K.P.A. prohibits a court from exercising jurisdiction if another court is already exercising jurisdiction consistent with the provisions of the act. 28 U.S.C. 1738A(g). The purpose of this last provision is to avoid the "havoc wreaked by simultaneous and competitive jurisdiction." *Kimmons* v. *Heldt*, 667 P.2d 1245 (Alaska 1983). The Texas court was providently exercising jurisdiction when the Arkansas court appropriately refused to interfere.

■ Even so, the Murphys contend that the Arkansas court erred in failing to exercise emergency jurisdiction. The P.K.P.A.

and the Uniform Child Custody Jurisdiction Act, Ark. Code Ann. § 9-13-201 to - 228 (Repl. 1993), both contain language providing for jurisdiction to be exercised on an emergency basis. The language of the two acts is almost identical in this regard. Under either act, the only requirements for an emergency order are the physical presence of the child and the existence of a genuine emergency such as abandonment or abuse. 28 U.S.C. § 1738A(c)(2)(C); Ark. Code Ann. § 9-13-203(a)(3) (Repl. 1993). However, emergency powers under both of the acts are limited. Emergency jurisdiction should not be used to modify a custody order permanently. *Mitchell* v. *Mitchell*, 437 So. 2d 122, 127 (Ala. Civ. App. 1983). Emergency jurisdiction may be used to enter a temporary order giving a party custody only for as long as it takes to travel with the child to the proper forum to seek a permanent modification of custody, usually the home state. Atkinson, *Modern Child Custody Practice*, § 3.18 at 148. In *Iacouzze* v. *Iacouzze*, 672 P.2d 949 (Ariz. Ct. App. 1983), *aff'd*, 672 P.2d 928 (Ariz. 1983), the appellate court affirmed the trial court's decision to give the mother temporary custody for the time it took her to commence proceedings in the child's home state of New Jersey. In *Nussbaumer* v. *Nussbaumer*, 442 So. 2d 1094, 1097-98 (Fla. Dist. Ct. App. 1983), the appellate court reversed a permanent change of custody and directed that on remand the trial court could enter a temporary order "for a period of time no longer than is reasonably necessary to allow the father to present his allegations of neglect . . . to the proper . . . court". Professor Atkinson suggests:

> A circumstance in which permanent modification might be appropriate in a state exercising emergency jurisdiction would be if the evidence of the mistreatment or abuse was available in the state exercising emergency jurisdiction, but was not available or difficult to obtain in the child's home state. The problem of availability of evidence, however, can be solved by taking testimony in one state and having it transmitted to another state.

Atkinson, *Modern Child Custody Practice*, § 3.18 at 148, n.170.

Here, the Murphys asked the Arkansas court to make them temporary guardians and, after a full hearing, to make them the permanent guardians. Thus, they sought a permanent

change in custody under the exercise of emergency jurisdiction. The Murphys made no suggestion that all of the evidence could not be produced in Texas, and, in fact, the Murphys returned the children to Texas, and filed their petition in intervention there. Thus, the Arkansas court correctly refused to exercise emergency jurisdiction.

Affirmed.