## Charles W. FRESHOUR *v.* Brenda J. WEST

98–338                                              971 S.W.2d 263

Supreme Court of Arkansas
Opinion delivered July 9, 1998

*Mildred Havard Hansen,* for appellant.

*Gary L. Sullivan,* for appellee.

TOM GLAZE, Justice. In this case, we granted review of the court of appeals decision of *Freshour v. West,* 61 Ark. App. 60, 962 S.W.2d 840 (1998), wherein the court construed Ark. Code Ann. § 9-10-113 (Repl. 1993), Arkansas's statutory law which sets out certain precepts that a court must consider before it awards custody of an illegitimate child. Until now, we have had only one opportunity to consider and interpret § 9-10-113. *See Norwood v. Robinson,* 315 Ark. 255, 866 S.W.2d 398 (1993). Thus, we granted review so we can construe this statute in light of our recognized common-law principles that tend to favor an award of custody of a child to a biological parent as opposed to a third party.

Here, Charles W. Freshour and Tera West were seventeen years old and unmarried when Tera gave birth to Victoria. Because neither Charles nor Tera took responsibility of Victoria, the maternal grandmother, Brenda West, assumed physical custody and care of the child. Afterwards, Brenda applied for and received AFDC and Medicaid benefits for Victoria, and as a result, the State subsequently filed this paternity action against Charles, seeking to determine if he was Victoria's father, and, if so, to make Charles financially responsible for her. After a DNA test conclusively established his paternity, Charles agreed he was Vic-

toria's father. The chancellor then entered an order requiring him to pay child support and to provide health insurance for Victoria.

After the foregoing findings, Charles requested the chancellor to award him custody of Victoria, which the chancellor denied, after conducting a full hearing on the matter. In making her decision, the chancellor accompanied the ruling with a lengthy letter opinion wherein she found that Charles is a fit parent to assume his parental role; but even so, the chancellor believed Victoria's interests would be best served by Victoria remaining in Brenda's custody. The chancellor concluded that, should circumstances materially change in the future, Charles is a fit person to take custody of Victoria. Meanwhile, the chancellor provided Charles should have liberal visitation with his daughter.

In this appeal, Charles's sole point for reversal is that the chancellor erred in awarding custody of Victoria to her maternal grandmother, Brenda, because the chancellor found Charles was fit and competent to assume his daughter's custody. Charles lists a string of case citations for the proposition that the law prefers a parent over a grandparent or other third person, unless the parent is proved to be incompetent or unfit. *See e.g. Shuh v. Roberson*, 302 Ark. 305, 788 S.W.2d 740 (1990); *Stamps v. Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988); *Jones v. Strauser*, 266 Ark. 441, 585 S.W.2d 931 (1979); *Payne v. Jones*, 242 Ark. 686, 415 S.W.2d 57 (1967); *Riley v. West*, 235 Ark. 192, 357 S.W.2d 497 (1962). Charles contends that when the chancellor found him to be a fit parent, the chancellor was obliged to place Victoria in his custody. Charles's argument overlooks the fact that the supreme court cases he cites all involved custody cases where the children were legitimate at the time of birth. However, in the instant case, Charles's responsibility for Victoria was established under Arkansas's paternity statute, § 9-10-113, and any right Charles may have to the custody of Victoria depends upon the requirements provided in § 9-10-113.

Section 9-10-113(a) provides that an illegitimate child shall be in the custody of its mother unless a court of competent jurisdiction enters an order placing the child in the custody of another party. Section 9-10-113(b) further provides that a biolog-

ical father, who has established paternity, may petition the proper court for custody of his child where the child resides; however, before the biological father can obtain custody, he must show all of the following:

> (1) He is a fit parent to raise the child;
> (2) He has assumed his responsibilities toward the child by providing care, supervision, protection, and financial support for the child; and
> (3) It is in the best interest of the child to award custody to the biological father.

Ark. Code Ann. § 9-10-113(c)(1), (2), and (3).

▮ In the present case, Tera, as biological mother, had custody of Victoria under § 9-10-113(a), but she surrendered "physical custody" of Victoria to her mother, Brenda.[1] On this point, the proof shows that both Tera and Victoria had initially lived with Brenda, but after having failed to provide for Victoria or to abide by Brenda's "house rules," Tera left the house, and Brenda has since kept Victoria and has been her sole caretaker. The record further reflects that Charles never voluntarily attempted to establish his paternity of Victoria, and such paternity was only established after the State initiated this paternity action against him. In short, for more than three years, Charles failed to make any effort to assume his responsibilities toward Victoria as required under § 9-10-113(c)(2), and this failure is sufficient for us to uphold the chancellor's finding and authority to deny Charles custody.

▮▮ The chancellor also found that, under § 9-10-113(c)(3), it was in Victoria's best interest for her to remain in Brenda's custody. We hold the evidence is sufficient to support that finding as well. In this respect, the chancellor gave full consideration to Charles's growth in maturity since Victoria's birth — Charles has since married, works steadily, and now responsibly supports two children in his marriage. Nonetheless, in making his argument, even Charles recognizes the difficulties he and his wife would face if there was an immediate removal of Victoria from the

---

[1] There is some testimony, primarily by Tera, that Brenda was provided "legal guardianship" to Victoria, but the record does not reflect any court order reflecting such guardianship.

only home she has known. He concedes the chancellor acted wisely in providing for the gradual introduction of Charles and his family into Victoria's new-found world. Besides the fact that Brenda has provided Victoria with a stable and suitable home and loving environment, Brenda also has physical custody and provides for the care of another child of Tera's. This half-sister, Emily, and Victoria have established a close relationship. It is settled law that, unless exceptional circumstances are involved, young siblings should not be separated from each other by dividing their custody. *See Johnston v. Johnston*, 225 Ark. 453, 283 S.W.2d 151 (1955); *Ketron v. Aguirre*, 15 Ark. App. 325, 692 S.W.2d 261 (1985) (where child's relationship to his younger half-brother was upheld as a compelling reason for refusing to change custody). Based on the record before us, we are unable to say the chancellor erred in finding it is in the best interest of Victoria for her to continue in Brenda's custody.

In conclusion, we make two additional points. First, we note that the court of appeals in its opinion discussed at length that Charles had failed to show a material change of circumstances to justify a change in custody. Material changes of circumstances aside, we reiterate the fact that it was Charles's burden in this case to show, pursuant to § 9-10-113, that (1) he is a fit parent, (2) he has assumed his responsibilities for Victoria's care and support, and (3) award of Victoria's custody to him would be in her best interest. As discussed above, he failed in his proof. Because of this failure of proof, the chancellor awarded custody of Victoria to Brenda, as it is empowered to do under § 9-10-113(a). The court's order awarding custody to Brenda was the court's first involving Victoria. Hereafter, if Charles is to obtain Victoria's custody, he will be required to present his case pursuant to § 9-10-113.

Second, we emphasize that, while there is a preference in custody cases to award a child to its biological parent, that preference is not absolute. *See Larkin v. Pridgett*, 241 Ark. 193, 407 S.W.2d 374 (1966) (where a biological mother sought custody of an illegitimate son, but court upheld award to paternal grandparents); *Tidwell v. Tidwell*, 224 Ark. 819, 276 S.W.2d 697 (1955) (where court upheld nine months' per year custody of legitimate

child in paternal grandparents). Rather, of prime concern, and the controlling factor, is the best interest of the child. *Larkin*, 241 Ark. at 199, 407 S.W.2d at 377. Here, the chancellor recognized the law's preference for custody to be with the natural parent, but for all the previously discussed reasons, decided such placement was not in Victoria's best interest. We cannot say the chancellor was clearly erroneous in her determination.

Charles, of course, may at some future date petition the proper court for custody of Victoria. If he so chooses, in order to be successful, Charles must come within the requirements for custody as set forth in § 9-10-113, including the provision providing that such placement be in Victoria's best interest.

Affirmed.

CORBIN, J., not participating.