Kimberly Dawn LLOYD and Derek Lloyd *v.*
Michael D. BUTTS

00-568                                        37 S.W.3d 603

Supreme Court of Arkansas
Opinion delivered February 8, 2001

*Woodruff Law Firm, P.A.*, by: *Jennifer E. Weaver*, for appellants.

*Barrett & Deacon*, by: *Robert J. Gibson* and *D.P. Marshall, Jr.*, for appellee.,

TOM GLAZE, Justice. The court of appeals certified this chancery court custody case because it involves a significant issue requiring clarification of the law pertaining to the natural-parent-preference rule. Ark. R. Sup. Ct. 1-2(b)(5). To understand and to reach this issue requires us to review the relevant proceedings that led to this appeal.

On May 1, 1992, appellee Michael Butts filed a divorce complaint against Kimberly Butts (now Kimberly Lloyd), and in that lawsuit, Michael sought custody of their children, Lanai and Tyler. In December 1992, Derek Lloyd was allowed to intervene, whereby he alleged he was the biological father of Tyler. On May 23, 1994, the chancellor granted Michael a divorce, found Derek to be Tyler's biological father, and found Kimberly and Derek to be "unfit and unsuitable for custody of the children." Michael was awarded custody of both children. In his findings, the chancellor observed that Kimberly and Derek were "nefarious and devious," "engaged in [a] clandestine affair for several years," and were "sly, cunning, and deceitful." The chancellor concluded that what Kimberly and Derek did was not just immoral, but lacking in basic character and demonstrating an "unfitness to nurture children, or inculcate values."

Kimberly and Derek did not appeal the chancellor's May 23, 1994, decision. However, they subsequently married and one year later, on May 24, 1995, they filed a motion seeking custody of the children and alleging that a substantial change of circumstances justified a change of custody. On September 10, 1997, the chancellor entered an order finding the Lloyds were no longer unfit parents, but because the chancellor found that no material change in circumstances had occurred involving the children, he ruled the children's best interests would be served by their staying with Michael. The Lloyds appealed this September 10 order, and the court of appeals affirmed the chancellor's decision in an unpublished opinion on July 1, 1998. In that appeal, the Lloyds conceded they had failed to prove a material change in circumstances to effect a change of custody; however, they attempted to raise a new issue

— that once the chancellor acknowledged the Lloyds to be "fit" parents, he was bound by law to place the children in their custody. The court of appeals related that the Lloyds, in making their argument, maintained that "the preference for natural parents rises above both the best-interest standard and the requirement for showing a change in circumstances." Citing *Barnes v. Barnes*, 312 Ark. 61, 847 S.W.2d 23 (1993), the court of appeals refused to address the Lloyds' natural-parent argument on appeal because the Lloyds failed to raise the issue below so the chancellor could rule on it.

After the appellate court's decision, the Lloyds filed a second petition for change of custody on May 6, 1999, once again alleging a change of circumstances. They asserted that (1) they were fit parents; (2) they were the natural parents of Tyler; (3) they had always provided for both children; (4) they could provide a suitable home for Tyler; and (5) when custody of Tyler was changed, a change of circumstances would occur with the other child, Lanai. The Lloyds also raised the issue they had tried to raise previously before the court of appeals, namely, that once the chancellor found them "fit" parents, Arkansas law, regarding the natural-parent-preference rule, required they be awarded custody of Lanai and Tyler. Michael responded, stating no material change in circumstances had occurred. He also submitted that the Lloyds were procedurally barred by *res judicata* from raising the natural-parent-preference issue because, while they could have raised this issue in the earlier proceeding culminating in September 1997, where they first sought modification of the chancellor's initial award of custody, they did not do so.

■ We first address Michael's claim that *res judicata* bars the Lloyds' natural-parent-preference argument. Although Michael raised *res judicata* as a defense below, the chancellor did not rule or rely on it in his final order. In *Slaton v. Slaton*, 330 Ark. 287, 956 S.W.2d 150 (1997), we were faced with the same issue when Teresa Slayton asserted the defense of *res judicata*, but failed to obtain a ruling from the chancellor on the issue; as a consequence, our court refused to consider the issue on appeal. *See Morrison v. Jennings*, 328 Ark. 278, 943 S.W.2d 559 (1997). As in *Slaton* and for the same reason, we are unable to decide Michael's *res judicata* defense on appeal.

We now turn our attention to the Lloyds' primary argument that the chancellor erred in rejecting their contention that, because the chancellor found them fit, the natural-parent-preference rule required the chancellor to award them custody of Lanai and Tyler. We hold the chancellor did not commit error.

■ We find the case of *Hancock v. Hancock*, 198 Ark. 652, 130 S.W.2d 1 (1939), most instructive. That case involved a custody battle over a thirteen-year-old son between the natural mother and the stepmother, after the boy's biological father died. There, the chancellor found the mother fit, but based on other evidence, awarded custody of the boy to the stepmother. On appeal, the *Hancock* court decided the mother should have been awarded custody, and in doing so, relied on the following rule announced earlier in *Holmes v. Coleman*, 195 Ark. 196, 111 S.W.2d 474 (1937):

> *Courts are very reluctant to take from the natural parents the custody of their child*, and will not do so unless the parents have manifested such indifference to its welfare as indicates a lack of intention to discharge the duties imposed by the laws of nature and of the state to their offspring suitable to their station in life. *When, however, the natural parents so far fail to discharge these obligations as to manifest an abandonment of the child and the renunciation of their duties to it, it then becomes the policy of the law to induce some good man or woman to take the waif into the bosom of their home, and when they have done so and, through their attentions to it, have learned to love it as if it were their very own child, this bond of affection will not then be severed, although the natural parent may later repent his breach of the laws of nature and of the state and offer to resume the duties and obligations which he should never have ceased to perform.* (Emphasis added.)

In different terms, our appellate court has more recently said that the rights of parents are not proprietary and are subject to their related duty to care for and protect the child; the law secures their preferential rights only as long as they discharge their obligations. *Jones v. Jones*, 13 Ark. App. 102, 680 S.W.2d 118 (1984); *Watkins v. Dudgeon*, 270 Ark. 516, 606 S.W.2d 78 (Ark. App. 1980).

■■ The rule is also settled that a judicial award of custody should not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree is in the best interest of the child. *Stamps v. Rawlings*, 297 Ark. 370, 761 S.W.2d 933 (1988); *see also Campbell v. Campbell*, 336 Ark. 379, 985 S.W.2d 724 (1999). In *Campbell*, this court said that, in order to

avoid relitigation of factual issues already decided, courts will usually restrict evidence in a modification proceeding to facts arising since the prior order. *Id*. at 383. The only other time a change is permissible is when there is a showing of facts affecting the best interest of the children that were either not presented to the chancellor or were not known by the chancellor at the time the original custody award was entered. *Id*. at 384.

Especially significant to the present case, this court has further held that its reasons for requiring more stringent standards for modifications than for initial custody determinations are to promote stability and continuity in the life of the child, and to discourage the repeated litigation of the same issues. *Jones v. Jones*, 328 Ark. 97, 940 S.W.2d 881 (1997). We recognized in *Jones* that the improper use of custody proceedings is more likely if parents are allowed to relitigate their relative fitness without the addition of significant new facts. *Id*. at 101. Of course, whether an initial proceeding or a modification proceeding, the polestar remains the best interest and welfare of the child. *See Jones v. Strauser*, 266 Ark. 441, 585 S.W.2d 931 (1979); *see also Ideker v. Short*, 48 Ark. App. 118, 892 S.W.2d 278 (1995). Finally, we look to *Freshour v. West*, 334 Ark. 100, 971 S.W.2d 263 (1998), where this court stated very clearly that, while there is a preference in custody cases to award a child to its biological parent, that preference is not absolute. Rather, of prime concern, and the controlling factor, is the best interest of the child. *Id*. at 104-105.

In reviewing the relevant history of the case in light of the foregoing case law, it is significant that, in the initial custody proceeding, Kimberly and Derek were determined unfit parents, and accordingly, they were denied custody of Lanai and Tyler. A decree fixing the custody of a child is final on conditions then existing and should not be changed unless there are altered conditions since the decree was rendered or there were material facts existing at the time of the decree, but unknown to the court, and then only for the welfare of the child. *Campbell, supra*. Moreover, the party seeking modification of the custody order has the burden of showing a material change in circumstances. *Id*.

Certainly to Kimberly's and Derek's credit, they have rectified their lives, and the positive changes they made were acknowledged by the trial court's findings in their two modification

proceedings that they are now fit. However, our court has also adopted the majority rule that a change of circumstances of the *noncustodial* parent is not sufficient to justify modifying custody. *Campbell, supra*; *see also Jones*, 326 Ark. 481, 931 S.W.2d 767. Here, the Lloyds had the burden of showing that a material change of circumstances had occurred since the chancellor's initial award of custody of the children to Michael in May 1994. While the chancellor found the Lloyds fit in both of the modification proceedings they have filed since 1994, he stated that they had failed to prove the material change of circumstances needed for them to prevail in their quests for custody. In fact, in reviewing the record in this appeal, Kimberly conceded that she was unaware of anything concerning the children's health and welfare that would warrant such a change. Nor was she aware of any mental abuse by Michael. Tyler was the main focus of the testimony, apparently because the Lloyds alternatively asked for custody of Tyler alone if they could not have both children. However, such a request in no way strengthened their case since our law is well established that young children should not be separated from each other in the absence of exceptional circumstances. *See Freshour, supra*. Nonetheless, Kimberly averred that the reasons she and Derek filed for custody was that "Tyler was biologically Derek's and mine, and he should live with us." In addition, she admitted that they filed their petition "because . . . the last time we went to court, . . . they basically made a ruling on something other than what we went to court for, and so we were advised to do it again." Thus, the record is abundantly clear that the Lloyds failed to meet their burden of showing a material change in circumstances. *See Campbell, supra*; *Riddle v. Riddle*, 28 Ark. App. 344, 775 S.W.2d 513 (1989).

Although Kimberly offered some testimony suggesting Michael controls Tyler and Tyler is afraid of him, other evidence was presented that Tyler is close to Michael. Tyler is described by Kimberly and Derek as getting straight "A's" in school, and as being affectionate, a happy-go-lucky kid, and a hugger. Again, none of this evidence supports a finding that would support the Lloyds' contentions. In sum, from our de novo review of the record, we cannot say the chancellor was clearly erroneous in his finding that the Lloyds failed to show a change of material circumstances that would warrant uprooting Tyler and Lanai to place them in the

Lloyds' custody. Therefore, we affirm the chancellor's denial of the Lloyds' petition for modification of custody.