Cynthia Brown THOMAS *v.* James W. AVANT

06-983 260 S.W.3d 266

Supreme Court of Arkansas
Opinion delivered June 28, 2007

*Bob W. Sanders*, for appellant.

*The Mathis Law Firm*, by: *Winston C. Mathis*, for appellee.

DONALD L. CORBIN, Justice. The present action is one involving child custody and requires this court to interpret provisions of the Uniform Child Custody and Jurisdiction Enforcement Act (UCCJEA), codified at Ark. Code Ann. §§ 9-19-101 to -401 (Repl. 2002), to determine whether the circuit court correctly exercised jurisdiction in the instant matter. Appellant Cynthia Brown Thomas argues on appeal that the trial court erred in (1) retaining exclusive jurisdiction of the petition to change custody as Oklahoma is the home state of the child and the most convenient forum under the UCCJEA; and (2) ruling that venue was proper in Clark County, Arkansas, under Ark. Code Ann. § 9-10-113 (Supp. 2005). We find no error and affirm.

Thomas and Appellee James W. Avant are the natural parents of minor child T.B. Thomas and Avant were never married, but in 1995, the State of Arkansas Child Support Enforcement Unit filed a complaint for child support against Avant in Clark County Circuit Court. Following entry of an agreed DNA testing order, Avant was decreed to be the father of T.B. and was ordered to pay child support. The court also entered an order granting Avant visitation rights. Thomas, who maintained custody of the child, moved to Oklahoma in 1998.

Sometime after the move, Avant filed a petition for change of custody in Clark County, and his petition was denied by an

order entered of record on December 1, 2000.[1] Avant again petitioned for a change of custody on February 7, 2005, arguing that there had been a material change in circumstances warranting a change of custody. In his petition, Avant alleged that Thomas failed to adequately care for T.B., as evidenced by the child's lack of hygiene skills and problems with her social development. In addition, Avant alleged that Thomas discouraged the child from maintaining contact with him.

In response, Thomas filed a pleading on February 18, 2005, objecting to the circuit court's jurisdiction and requesting a transfer of the case to Rogers County, Oklahoma, pursuant to the UCCJEA. Therein, she averred that she and T.B. had been residents of Rogers County for more than five consecutive years and, thus, Arkansas was no longer the home state of T.B. and no longer had exclusive, continuing jurisdiction. Thomas also stated that Clark County was not the proper venue for the custody action, and it was an inconvenient forum, as most witnesses and evidence regarding a change of custody were located in Oklahoma. Attached to Thomas's pleading was an affidavit signed by her and stating that at least eleven witnesses with information regarding the care of T.B. resided in Oklahoma. Avant responded to Thomas's objection and noted that the parties had been before the Clark County Circuit Court numerous times in the last five years, and Thomas had not previously objected to the court's jurisdiction. The trial court denied the motion to transfer by an order entered on May 25, 2005.

Avant filed an amended petition for change of custody on August 10, 2005, realleging his previous allegations and adding that he had been denied court-ordered telephone visitation with T.B. and that T.B. continued to struggle in school. Thomas filed a response denying each of Avant's allegations, but raising no objection to the circuit court's jurisdiction or venue.

On February 16, 2006, Thomas filed a motion objecting to venue and arguing that under section 9-10-113, Clark County was not the proper venue and was an inconvenient forum. In making her argument, Thomas relied on this court's decision in *Fuller v. Robinson*, 279 Ark. 252, 650 S.W.2d 585 (1983), wherein this

---

[1] In the years between 2000 and 2005, the parties to this matter appeared before the circuit court several times over visitation matters, as well as matters of contempt stemming from Thomas's failure to comply with the court's visitation orders.

court held that a custody matter involving an illegitimate child must be filed in the county where the child resides.[2]

Thomas also filed an action in Rogers County, Oklahoma District Court, seeking a determination that Oklahoma was T.B.'s home state and that it had jurisdiction. The Rogers County court held a hearing via telephone on May 4, 2006. In an order entered on May 17, 2006, the court found that it was the home state of T.B. as defined by the UCCJEA and that it was the proper forum to hear the custody matter. The trial court further reasoned, however, that it was without statutory authority to assume full jurisdiction of the case due to the fact that the Clark County Circuit Court had not relinquished jurisdiction.

A hearing on the custody matter was held in Clark County Circuit Court on June 13, 2006. The trial court entered an order on June 15, 2006, finding that it had jurisdiction and that venue was proper in Clark County. The trial court found that there had been a material change in circumstances and that Avant was the proper person to have custody of T.B. This appeal followed.[3]

As her first point on appeal, Thomas argues that the trial court erred in exercising continuing, exclusive jurisdiction over Avant's petition for change of custody under the UCCJEA. According to Thomas, the circuit court lacked jurisdiction because neither she nor T.B. resided in Clark County or had a significant connection with Arkansas as required by section 9-19-202, a part of the UCCJEA. Avant counters that the court must consider the requirements of the UCCJEA and the Parental Kidnapping Prevention Act (PKPA), codified at 28 U.S.C. § 1738A (2000), concurrently, and that under these acts, the primary consideration in determining jurisdiction is whether there is exclusive, continuing jurisdiction.

Our standard of review in the present case is de novo, although we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *See West v. West*, 364 Ark. 73, 216 S.W.3d 557 (2005); *Arkansas Dep't of Human Servs. v. Cox*, 349 Ark. 205, 82 S.W.3d 806 (2002).

As this court has recognized, the UCCJEA is the exclusive method for determining the proper state for jurisdictional purposes

---

[2] The trial court denied this motion by an order entered on May 11, 2006.

[3] Thomas does not appeal the trial court's finding that there was a material change of circumstances warranting a change of custody to Avant.

in proceedings involving matters of child custody that involve other jurisdictions. *See West*, 364 Ark. 73, 216 S.W.3d 557. A stated purpose of the UCCJEA is to avoid relitigation of child-custody determinations in other states. *Id.* Also recognized within the confines of the UCCJEA is the notion of exclusive, continuing jurisdiction at section 9-19-202(a), which provides in relevant part:

> (a) Except as otherwise provided in § 9-19-204, a court of this state which has made a child-custody determination consistent with § 9-19-201 or § 9-19-203 has exclusive, continuing jurisdiction over the determination until:

> (1) a court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or

> (2) a court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Although the UCCJEA governs determinations of jurisdiction, this court has also noted that the jurisdictional preferences set out in the PKPA must also be taken into consideration and where the two conflict, the federal law of the PKPA controls. *See Cox,* 349 Ark. 205, 82 S.W.3d 806; *Hudson v. Purifoy*, 337 Ark. 146, 986 S.W.2d 870 (1999). Under the PKPA, jurisdictional preference is given to the state with continuing jurisdiction. *Id.* In fact, the PKPA specifically states:

> The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsections (f), (g), and (h) of this section, any custody determination or visitation determination made consistently with the provisions of this section by a court of another State.

28 U.S.C. § 1738A(a). As recognized by this court, the hierarchy of jurisdictional preferences under the PKPA is (1) continuing jurisdiction, (2) home-state jurisdiction, (3) significant-connection jurisdiction, and (4) jurisdiction when no other jurisdictional basis is available. *Id.*; *Murphy v. Danforth*, 323 Ark. 482, 915 S.W.2d 697 (1996); *see also Gray v. Gray*, 69 Ark. App. 277, 12 S.W.3d 648 (2000).

Another state may modify a custody determination only if it has jurisdiction *and* the court of the other state no longer has jurisdiction or has declined to exercise jurisdiction. 28 U.S.C. § 1738A(f).

 In the present case, an Oklahoma court determined that it was the home state of T.B. for purposes of the UCCJEA; however, that same court recognized that it was without statutory authority to assume full jurisdiction of the case as the Arkansas court had not relinquished jurisdiction. Moreover, the trial court has entered numerous orders, beginning with the initial order establishing paternity and several orders dealing with custody and visitation. As a result, the trial court had exclusive, continuing jurisdiction over any child-custody determination until it made either of the two determinations set forth in section 9-19-202(a). Thus, pursuant to the PKPA, the continuing, exclusive jurisdiction of this state's court trumps any home-state jurisdiction that an Oklahoma court might have. Thomas's assertion that Oklahoma, as T.B.'s home state, is favored as maintaining jurisdiction under this court's decision in *Cox*, 349 Ark. 205, 82 S.W.3d 806 (2002), is simply without merit. *Cox* did not involve an issue of exclusive, continuing jurisdiction versus home-state jurisdiction and thus is inapposite.

 In addition, the trial court's decision to maintain its exclusive, continuing jurisdiction is warranted when reviewing the issue of whether T.B. has a significant connection with this state.[4] The record reflects that T.B.'s father and his family continue to reside in Arkansas. Avant exercises his visitation rights to T.B. in Arkansas, where the child has attended church and vacation bible school. T.B. has friends who live in Arkansas, with whom she maintains relationships. Thus, it is clear that T.B. has maintained significant connections with Arkansas and that the lower court possessed a level of familiarity with the parties and issues in this case to warrant its exercise of exclusive, continuing jurisdiction.

 Our conclusion is in line with reasoning in prior cases interpreting jurisdiction under the UCCJEA. Most recently, in *West*, 364 Ark. 73, 216 S.W.3d 557, this court, in concluding that

---

[4] Although the trial court did not analyze the instant matter from the standpoint of whether T.B. maintained significant contacts thus warranting its continued jurisdiction under the UCCJEA, it is axiomatic that this court can affirm a trial court if the right result is reached even if for a different reason. *See Norman v. Norman*, 347 Ark. 682, 66 S.W.3d 635 (2002).

the trial court had exclusive, continuing jurisdiction, looked to whether the children had significant contacts with this state. In determining that there were significant contacts, this court pointed out that since their parents' divorce, the children had spent three summer breaks, one spring break, and three Christmas breaks with their father in Arkansas. The court also made note of the fact that their father and other relatives still resided in the state. The court then declined to address the issue of whether substantial evidence existed in Arkansas, as the court determined that a circuit court must find both that a significant connection and substantial evidence do not exist in order to lose jurisdiction. In other words, once it is determined that a significant connection remains, it is unnecessary under section 9-19-202(a) to also determine whether there is substantial evidence available in this state. Thus, we cannot say the trial court erred in ruling that it had continuing, exclusive jurisdiction over the instant matter.[5]

Next, Thomas argues that the trial court erred in ruling that venue was proper in Clark County, pursuant to section 9-10-113, because T.B.'s place of residence for seven years prior to Avant filing his petition was in Rogers County, Oklahoma. Avant counters that Thomas waived any objection to venue by failing to raise it in a timely manner. Alternatively, he argues that section 9-10-113 is inapplicable to this case.

First, we turn to Avant's contention that Thomas waived any objection to venue. This court has recognized that a defendant waives its objection to improper venue by its inaction when it fails to raise the defense in its answer or in a motion filed prior to or simultaneously with its answer. *Gailey v. Allstate Ins. Co.*, 362 Ark. 568, 210 S.W.3d 40 (2005). Under Ark. R. Civ. P. 12(b), a party must assert the defense of improper venue in its answer or in a motion filed prior to or simultaneously with its answer. Failure to do so results in a waiver of such a defense. *See* Ark. R. Civ. P. 12(h)(1).

■ With regard to the waiver issue, Avant first asserts that Thomas waived any objection to venue by not raising it in the

---

[5] Thomas also makes mention in her brief that Arkansas is an inconvenient forum. As she failed to develop this argument on appeal or to provide any convincing argument or authority, we will not address the inconvenient-forum issue. *See Hester v. State*, 362 Ark. 373, 208 S.W.3d 747 (2005) (stating that this court does not research or develop arguments for appellants).

prior custody proceeding that resulted in the court's order of December 1, 2000. He cites to no argument or authority, however, for the proposition that a party must raise such an objection in a prior custody matter in order to raise it in a subsequent custody matter. Thus, we will not consider the merits of this argument. *See, e.g., Ginsburg v. Ginsburg,* 359 Ark. 226, 195 S.W.3d 898 (2004).

Moreover, Avant asserts that Thomas did not object to venue in her initial responsive pleading and thus waived any such objection. Avant's assertion is simply incorrect, as Thomas's objection to jurisdiction raised the venue issue, citing specifically to section 9-10-113 and this court's decision in *Fuller,* 279 Ark. 252, 650 S.W.2d 585. Nevertheless, Thomas's argument that venue was not proper in Clark County is without merit.

Pursuant to section 9-10-113(a), an illegitimate child shall be in the custody of its mother unless a court of competent jurisdiction enters an order placing the child in the custody of another party.[6] *See also Freshour v. West,* 334 Ark. 100, 971 S.W.2d 263 (1998). Section 9-10-113(b) provides that a biological father may petition the court for custody if he has established paternity in a court of competent jurisdiction. *See id.* Custody may be awarded to a biological father upon a showing that: (1) he is a fit parent to raise the child; (2) he has assumed his responsibilities toward the child by providing care, supervision, protection, and financial support for the child; and (3) it is in the best interest of the child to award custody to the biological father. *See* Ark. Code Ann. § 9-10-113(c).

In addition to the three factors enumerated in section 9-10-113, this court recognized in *Norwood v. Robinson,* 315 Ark. 255, 866 S.W.2d 398 (1993), that the father of an illegitimate child must show a material change of circumstances in order to assert custody. Specifically, this court found that "[i]mplicit in the order of paternity establishing visitation was a determination that custody should continue to rest in the mother." *Id.* at 259, 866 S.W.2d at 401. Avant asserts that because of this court's decision in *Norwood,* section 9-10-113 is not applicable to the instant case. Avant misconstrues this court's holding in *Norwood,* as it does not replace the requirements of section 9-10-113, but rather adds the

---

[6] Section 9-10-113 was amended by Act 654 of the 2007 General Assembly, but the effective date of the act has not yet passed.

additional requirement that a father show a change of circumstances in order to assert custody.

Although Avant's reliance on *Norwood* is misplaced, we are equally unpersuaded by Thomas's reliance on this court's decision in *Fuller*, 279 Ark. 252, 650 S.W.2d 585. There, the issue was whether a custody proceeding must be brought in the county where the child resides or whether it could be filed in a county where either the mother or father resides. This court concluded that under Ark. Stat. Ann. § 34-718 (Supp. 1981), now codified as section 9-10-113, venue for custody matters of an illegitimate child was limited to the county wherein the child resides.

Thomas's argument regarding the applicability of section 9-10-113 and *Fuller* ignores two important factors. First, *Fuller* did not involve an interstate custody dispute. Here, T.B. no longer resides in Arkansas, so the provisions of section 9-10-113 are inapplicable. More importantly, Thomas ignores the conflict between the state statute and the jurisdictional requirements of the UCCJEA and the PKPA. As already stated, the circuit court had exclusive, continuing jurisdiction, and where there is any conflict between state and federal law, federal law preempts state law. *See Cox*, 349 Ark. 205, 82 S.W.3d 806. Thus, the preference of exclusive, continuing jurisdiction under the PKPA preempts any finding that venue was not proper under section 9-10-113. Accordingly, Thomas's argument on this point fails.

Affirmed.